In the
United States Court of Appeals
For the Seventh Circuit

No. 98-2137

William T. Divane, Jr., et al.,

Plaintiffs-Appellees,

v.

Krull Electric Co., Inc.,

Defendant,

and

John J. Curry, Jr.,

Respondent-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 95 C 6108--George W. Lindberg, Judge.


Argued February 8, 1999--Decided December 28, 1999


    Before Posner, Chief Judge, and Bauer and Kanne,
Circuit Judges.

    Kanne, Circuit Judge.  After a tortuous three-
year road to trial, which cost plaintiffs over
$40,000 in attorneys' fees and costs (with only
$14,000 originally in dispute), the plaintiffs,
collectively known as Electric Insurance Trustees
("Trustees"), won a judgment at bench trial for
$54,001.07. During post-judgment proceedings
(based on pre-trial conduct), the district court
imposed Rule 11 sanctions on John J. Curry, Jr.,
counsel to defendant Krull Electric Co. Curry
appeals both the imposition of sanctions and the
determination of the nature and amount of these
sanctions, claiming that the court did not comply
with Rule 11 of the Federal Rules of Civil
Procedure and that the record does not contain
evidence of sanctionable conduct. We find that
the procedure employed by the district court
effectively complied with the requirements of
Rule 11(c)(1)(A) but find that the district court
did not properly limit the amount of attorneys'
fees that it assessed as a sanction. For this
reason, we affirm the sanction determination but
vacate the award and remand to the district court

for recomputation.

I.  History

A.  No. 95 C 2075 (Judge Kocoras Case)

In April 1995, Trustees filed suit against Krull Electric to collect about $14,000 in delinquent fringe-benefit contributions. This delinquency arose in 1992 and 1993 and was discovered by a 1994 audit. Krull Electric filed a counterclaim alleging that Trustees had breached their fiduciary duties and violated various anti-discrimination laws.

Trustees claimed that Krull Electric had been under-reporting hours worked each week by Tan Lee, an employee and the husband of Krull Electric President Pamela Lee, to minimize the amount they were required to contribute for Tan Lee to remain eligible for health benefits available to members of Local 134 of the International Brotherhood of Electrical Workers. Krull Electric was liable to Local 134's employee-benefit plan for reimbursement of Lee's health benefits under the "Owner-in-Fact" clause of a collective-bargaining agreement ("CBA") signed by Krull Electric and Local 134.

On September 13, 1995, District Court Judge Charles Kocoras dismissed Krull Electric's counterclaim because Krull Electric lacked standing to sue Trustees. Eight months later, on May 15, 1996, Krull Electric presented a motion to amend its answer and counterclaim and to remove certain admissions related to Pamela Lee's knowledge of the "Owner-in-Fact" clause and Krull Electric's status as a signatory to the CBA. The court denied these motions. In October 1995, Trustees filed a motion for summary judgment, and in November 1995, despite the fact that its counterclaim had been dismissed, Krull Electric filed a motion for summary judgment on its counterclaim. In support of its motion for summary judgment, Krull Electric claimed, inter alia, that it never received notice of the "Owner-in-Fact" clause and that it was not a party to the CBA. In all of the proceedings that followed, Krull Electric never again raised lack of notice again as a defense to Trustees' claims. In April 1997, based on two evidentiary hearings, Magistrate Judge Joan Lefkow concluded that Krull Electric received notice of the "Owner-in-Fact" clause in 1992. Overruling Krull Electric's objections, Judge Kocoras entered summary judgment for Trustees, which Krull Electric has appealed separately in Divane v. Krull Electric Co., No. 98-1276 (7th Cir. 1999).

B.  No. 95 C 6108 (Judge Lindberg Case)

In 1995, Trustees filed a separate action against Krull Electric after Krull Electric stopped making required contributions to Trustees' employee-benefit plan in 1994. On May 10, 1996, Krull Electric filed its answer and a counterclaim alleging that since it was no longer a signatory to the CBA, Krull Electric's suit violated the Labor Management Relations Act ("LMRA"), 29 U.S.C. sec.sec. 141-187.

The answer to Trustees' claim refused to admit several statements that Krull Electric admitted in the companion litigation, including those statements which Judge Kocoras denied Krull Electric the opportunity to amend in 1996. The counterclaim was predicated on the contention that in October 1994, Local 134 determined that Krull Electric was no longer a signatory to the CBA, which Curry claims was supported by an affidavit he prepared for Pamela Lee. This answer and counterclaim were the first papers Curry submitted to the court (Krull Electric was initially represented by other counsel in the litigation before Judge Kocoras), and these filings constitute the basis for the sanctions eventually imposed by Judge George Lindberg. On May 24, 1996, Trustees deposed Pamela Lee, but Curry objected to all questions regarding the factual basis for Krull Electric's counterclaim. Pamela Lee claimed she did not know what Local 134 might have decided in 1994 and, counterintuitively, that this information was privileged. After these events, Trustees' counsel first orally warned Curry and Krull Electric that they would seek sanctions if Krull Electric's counterclaim was factually unsupported.

In July 1996, after an inquiry into Krull Electric's finances revealed that Krull Electric had a net worth of just $5,000, Judge Lindberg instructed the parties to engage in settlement discussions since judgment could not possibly be collected. Trustees refused Krull Electric's settlement offer, and Krull Electric's counterclaim prevented Trustees from voluntarily dismissing their complaint. To force Krull Electric to dismiss its counterclaim, on September 13, 1996, Trustees' counsel sent a motion to Curry requesting that he withdraw the counterclaim or correct its answer by October 4, 1996, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Civil Procedure. Curry did not withdraw or correct Krull Electric's pleading, so on October 17, 1996, Trustees filed a motion to dismiss, requesting that the court strike Krull Electric's answer and enter sanctions against Curry in the amount of $500. The district court denied this motion, finding that the motion to strike was a Rule 12 motion and, by claiming

Local 134 determined that Krull Electric was no longer a signatory to the CBA, Krull Electric raised a question of fact.

On November 13, 1996, both parties seemingly agreed voluntarily to dismiss their claims with prejudice and a stipulation of dismissal. When asked about the nature of his party's counterclaim at the hearing, Curry confused Krull Electric's counterclaim with the counterclaim filed in the other litigation and, when corrected, responded, "Well, I don't know what you are talking about." The parties ultimately could not agree to the language of a joint stipulation, so the case moved towards trial. On multiple occasions prior to trial, Curry summarized Krull Electric's counterclaim as including allegations of sex discrimination and equitable estoppel despite the fact that the counterclaim did not contain such allegations.

A bench trial commenced on November 12, 1997, and concluded on December 15, 1997. At trial, Curry did not support the factual claims in Krull Electric's counterclaim with any evidence and claimed that the October 1994 determination by Local 134 was no longer legally relevant. On December 23, 1997, the court entered a judgment for Trustees in the amount of $54,001.37. At that time, Judge Lindberg granted Trustees leave to file a petition for attorneys' fees and sanctions.

On January 9, 1998, Trustees filed a motion for Rule 11 sanctions against Curry along with a petition for statutory attorneys' fees. This motion was served on Krull Electric and Curry on the day it was filed. Curry and Krull Electric filed a motion to strike the motion for Rule 11 sanctions on the grounds that Trustees had not provided Krull Electric with the Rule 11(c)(1)(A) twenty-one day safe harbor, the motion for sanctions was untimely and the motion lacked specificity. On February 6, 1998, Curry and Krull Electric filed a brief in response to the motion for sanctions.

On March 24, 1998, the court entered an order imposing sanctions against Curry requiring that Curry pay attorneys' fees of $40,171.07 to Trustees and $5,000 to the court, or, if Krull Electric satisfied the entire judgment against it, only to pay the $5,000 fee to the court. The order was issued pursuant to Rule 11(b)(3) and based on Krull Electric's failure to substantiate the statement raised in the counterclaim that Local 134 determined in October 1994 that Krull Electric was no longer a signatory to the CBA. The order also imposed sanctions pursuant to Rule 11(b)(4) based on Krull Electric's failure to

make admissions of fact in its answer that it had previously admitted in the litigation before Judge Kocoras.

On April 3, 1998, Curry filed a motion under Rule 59(e) of the Federal Rules of Civil Procedure to amend the March 24, 1998, order. The court allowed Curry to supplement this motion with an additional memorandum in support of his motion. The court also allowed Trustees to file a response to the Rule 59(e) motion. However, on April 14, 1998, the court entered a memorandum order that vacated the prior order of sanctions and summarily imposed $33,292 in fees and $2,306.69 in costs on Curry as a sanction because it was "less likely than previously assumed" that Krull Electric would satisfy its judgment. Krull Electric appeared "less likely" to satisfy the judgment against it because it filed for bankruptcy on March 27, 1998.

II. Analysis

On appeal, Curry raises three issues: (1) whether the trial court abused its discretion by imposing sanctions in the manner that it did; (2) whether the trial court erred in holding that Curry violated Rule 11 in filing Krull Electric's counterclaim; (3) whether the trial court abused its discretion in calculating the nature and amount of Rule 11 sanctions.

We review a trial court's decision to grant Rule 11 sanctions with deference. See Retired Chicago Police Ass'n v. Firemen's Annuity and Benefit Fund, 145 F.3d 929, 933 (7th Cir. 1998). As we have stated, "because the trial court alone has an intimate familiarity with the relevant proceedings, its decision whether counsel has conducted the kind of inquiry required by Rule 11 and taken a position reasonable in light of the facts and governing law is reversible only when there has been an abuse of discretion." R.K. Harp Inv. Corp. v. McQuade, 825 F.2d 1101, 1103 (7th Cir. 1987).

A. Violations of Rule 11(c)

Curry's primary argument is that, in its orders to impose sanctions, the trial court failed to follow the procedures required by Rule 11(c), which are designed to give Curry a full and fair opportunity to respond and show cause before sanctions are imposed. Under the 1993 amendments to Rule 11(c), sanctions proceedings may be initiated in two ways, by motion or at the initiative of the trial court.

When sanctions are requested by a party's motion, Rule 11(c)(1)(A) requires that two

procedures be followed. First, the motion for sanctions must be made "separately from other motions or requests and [must] describe the specific conduct alleged to violate subdivision (b)." Fed. R. Civ. P. 11(c)(1)(A). Permitting a motion for sanctions to be made in conjunction with another motion constitutes an abuse of discretion. See Corley v. Rosewood Care Center, Inc., 142 F.3d 1041, 1058 (7th Cir. 1998). Second, to facilitate deterrence, the motion may not be presented to the court unless, within twenty-one days of service, the movant has not withdrawn or corrected the challenged behavior. Fed. R. Civ. P. 11(c)(1)(A). A court that imposes sanctions by motion without adhering to this twenty-one day safe harbor has abused its discretion. See id.; Johnson v. Waddell & Reed, Inc., 74 F.3d 147, 150-51 (7th Cir. 1996).

Appellant claims that the district court abused its discretion by failing to abide by the terms of Rule 11(c)(1)(A) in three distinct ways: (1) by allowing Trustees to petition for sanctions post-judgment; (2) by allowing Trustees to petition for sanctions without allowing Krull Electric the twenty-one day safe harbor; and (3) by allowing Trustees to file a petition when a petition for sanctions was no longer timely.

Curry initially contends that, since the purpose of Rule 11(c)(1)(A) is to deter claimants from filing frivolous motions and pleadings, delaying the decision to allow motions for sanctions until after judgment "completely defeats the interests" that the Rule hopes to promote. After judgment has been entered, imposition of sanctions cannot affect the prior filing of motions, because parties have no opportunity to correct their sanctionable conduct. However, Rule 11(c)(1)(A) does not specify any time period when a motion for sanctions must be filed, and we see no need to establish one. The decision to impose sanctions is left to the discretion of the trial court in light of the available evidence. In this case, the court found that "the lack of evidentiary support for defendant's counterclaim could not have been determined until trial was completed." In such circumstances, the interest in deterring further frivolous post-judgment motions by the same litigants or in deterring future litigants may be promoted by a post-judgment request for sanctions. By themselves, the purposes of Rule 11(c)(1)(A) do not justify a broad rule that sanctions cannot be imposed as a result of a motion properly submitted to the court after a judgment.

Rule 11(c)(1)(A) states that a sanctions motion "shall not be filed with or presented to the court unless, within twenty-one days after the

service of the motion (or such period as the court may prescribe), the challenged paper, claim, defense, contention, allegation or denial is not withdrawn or appropriately corrected." We have previously held that this phrase contemplates a twenty-one day safe harbor, which a party may use to withdraw or correct its actions to avoid the imposition of sanctions. See Corley, 142 F.3d at 1058. The trial court acknowledged that Trustees' most recent motion had been presented to the court simultaneously with its service on Krull Electric and Curry. However, because there was no way that Curry or Krull Electric could withdraw Krull Electric's pleadings, the court found that "there is no need to allow any safe harbor period for defendant." The court additionally noted that "Curry received numerous oral and written warnings from opposing counsel during the pendency of this lawsuit regarding his sanctionable conduct along with oral and written demands for the withdrawal or correction of his answer and counterclaim."

Curry asks us to adopt the approach of other circuits, which have held that a district court has abused its discretion by granting a motion for sanctions first submitted to it after the court granted a motion for summary judgment. In Barber v. Miller, 146 F.3d 707, 710-11 (9th Cir. 1998), the Ninth Circuit found it "abundantly clear" that repeated notice was given of a party's violation of Rule 11(b). Id. at 710. Despite this notice, the appellee never served a motion on the appellant, and the Ninth Circuit found that this procedural defect was sufficient to cause the reversal of the imposition of sanctions. The Ninth Circuit noted that "[i]t would therefore wrench both the language and purpose of the amendment to [Rule 11(c)(1)(A)] to permit an informal warning to substitute for service of a motion." Id. Similarly, in Ridder v. City of Springfield, 109 F.3d 288, 295 (6th Cir. 1997), the Sixth Circuit reversed the district court's imposition of sanctions where the motion for sanctions was not filed until the conclusion of the case by summary judgment. The district court imposed sanctions initiated by a party's motion after the court granted that party's motion for summary judgment without requiring the twenty-one day safe harbor, which the district court considered an "empty formality." The Sixth Circuit disagreed, finding that "sanctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed with or presented to the court; this service and filing must occur prior to final judgment or judicial rejection of the offending contention." Id. at 297. We agree with both the Sixth and the Ninth Circuits that the twenty-one

day safe harbor is not merely an empty formality. However, in Barber no motion for sanctions was ever filed, and in Ridder the motion for sanctions that was filed never complied with the twenty-one day safe harbor. In this case, Trustees served Curry with a motion for sanctions more than twenty-one days prior to submitting the motion to the court and more than twenty-one days prior to the rendering of a final judgment. Therefore, the precedent cited by Curry has no relevance to the case before us.

The district court found that the twenty-one day safe harbor was a mere formality, and in addition, that Trustees had provided Curry with proper warning. Rather than accept the district court's contention that the twenty-one day safe harbor is unnecessary on post-judgment motions for sanctions, we look to the record before us and take notice of the September 1996, service on Curry by Trustees. We are not bound by the district court's reasoning and may affirm a grant of sanctions on any basis supported by the record and the law. See In re Volpert, 110 F.3d 494, 500 (7th Cir. 1997).

On September 19, 1996, Trustees served Curry with a written motion to strike the counterclaim, and Trustees in a separate written motion informed Curry that they would move for Rule 11 sanctions on the counterclaim. On October 17, 1996, at the motion hearing, Trustees informed Curry that they would additionally move for sanctions based on Curry's answer to Trustees' complaint. At the same hearing, the district court addressed Trustees' motion for Rule 11 sanctions. The district court felt that such a motion was premature, because the counterclaim raised questions of fact that still had adequate time to be discovered. By so ruling, Judge Lindberg effectively extended the safe harbor for Krull Electric and Curry until trial, by which time the factual basis for the answer and counterclaim would have been determined.

As the district court noted, Rule 11(c)(1)(A) allows the court discretion to grant a party additional time to correct or withdraw its action. Although taking Trustees' motion under advisement pending the resolution of the factual dispute would have been a more appropriate method to provide Curry with time, the court instead dismissed the motion as untimely while taking notice of Trustees' fair warning to Curry. The court noted in its memorandum order for sanctions that "[Curry] received several oral and written warnings from opposing counsel during the pendency of this lawsuit regarding his sanctionable conduct along with oral and written demands for the withdrawal or correction of his

answer and counterclaim." Having been provided with an additional year in which to substantiate Krull Electric's factual claims with evidence, or in the alternative to correct or withdraw the counterclaim and answer, Curry failed to do either. In fact, on several instances, Curry seemed confused about the very nature of the counterclaim, confounding the LMRA claim in the present litigation with the counterclaims that were dismissed in the companion litigation.

Rule 11(c)(1)(A) contemplates that the district court may allow a party more than twenty-one days to correct or withdraw its pleadings, and the fact that Judge Lindberg effectively gave Curry until the end of trial to do so does not vitiate the numerous effective warnings given by Trustees. We find that Trustees effectively complied with the twenty-one day safe harbor provision of Rule 11(c)(1) (A), and the dismissal of Trustees initial motion to sanction Curry as premature did not extinguish this effective notice. Therefore the district court did not abuse its discretion in granting Trustees' motion for sanctions on this ground.

Appellant also asserts that he was served with Trustees' motion for sanctions on January 9, 1998. If the only effective notice of the motion's pendency was given in 1996, Curry contends that we should estop action on the motion because it was not filed in a timely fashion. As we stated in Kaplan v. Zenner, 956 F.2d 149, 151 (7th Cir. 1992), motions for Rule 11 sanctions should be filed, "as soon as practicable after discovery of a Rule 11 violation." Curry uses our admonition to suggest that, if Trustees determined he violated Rule 11(b) in September 1996, they should have filed an independent motion for sanctions soon thereafter. By waiting one-and-one-half years to file, their motion should have been granted only in the exercise of the court's equitable powers. Since Trustees raised no equitable considerations to explain such a delay, the motion should have been denied. Even though Kaplan addressed the imposition of Rule 11 sanctions before the 1993 amendments, in that case we addressed arguments that correspond to those made here.

In Kaplan, the appellant had been named as a defendant in a civil RICO action in 1987. In 1988, he filed a motion to dismiss for failure to state a claim. This motion was granted, and the appellant played no further role in the litigation. Two years later, when the parties appeared in court to settle, the appellant moved for Rule 11 sanctions against the original plaintiff. The district court denied the appellant's motion, finding that the motion for

sanctions had not been brought in a timely fashion. We reversed, finding that plaintiff could have relied on our prior precedent in Szabo Food Serv. Inc. v. Canteen Corp., 823 F.2d 1073 (7th Cir. 1987), and for purposes of timely filing of a sanctions motion, "[r]easonableness is necessarily dictated by the specific facts and circumstances in a given case." Kaplan, 956 F.2d at 152.

Here, no specific facts or circumstances indicate that Trustees wrongly delayed seeking Rule 11 sanctions. Immediately after Pamela Lee's testimony, when it became apparent to Trustees' counsel that the counterclaim lacked a factual basis, Trustees informed Krull Electric and Curry that they would file for sanctions if factual information to substantiate this claim did not emerge. Instead of waiting until trial, Trustees moved ahead with a motion for sanctions, serving Krull Electric in September 1996, and moving for sanctions before the court on October 17, 1996. As noted earlier, the court dismissed the motion then because sanctions would be premature before Krull Electric had an opportunity to prove the counterclaim. For this reason, Trustees waited until after trial to move again for sanctions.

Curry's timeliness argument against a motion for Rule 11 sanctions mirrors the common law doctrine of laches. To make a claim of laches, Curry must prove that Trustees' delay unreasonably prejudiced Curry and Krull Electric. Having been granted additional time to amend or withdraw the pleadings, neither Curry nor Krull Electric was unreasonably prejudiced by the delay in filing the motion. Moreover, weighing the competing equities with regard to such a timeliness claim lies within the sound discretion of the trial court. We do not overrule such judgments lightly. Therefore, we find that the court did not abuse its discretion here in denying Curry's equitable argument against the motion for sanctions.

B.  Findings of Fact

Curry also argues that the district court erred in applying Rule 11 to Krull Electric's counterclaim and answer. The application of Rule 11 to the facts and circumstances of a particular case is an exercise of the trial court's discretion, which will be reviewed for abuse of discretion. See Johnson, 74 F.3d at 151. None of the findings of fact which underlie the imposition of sanctions will be set aside unless clearly erroneous. See Finance Investment Co. v. Geberit AG, 165 F.3d 526, 530 (7th Cir. 1998).

Rule 11(b) mandates that an attorney who presents a pleading to the court certify that:

to the best of [his or her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery [and] . . . (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(b) (emphasis added).

To measure the reasonableness of a party's inquiry into the factual bases of its claims, we look to a number of factors including: "whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts." Brown v. Federation of State Medical Bds. of the United States, 830 F.2d 1429, 1435 (7th Cir. 1987).

The district court found that Curry violated Rule 11(b)(3) in filing Krull Electric's counterclaim because Curry never presented evidence to support any facts that could prove its counterclaim under the LMRA nor did Curry direct Krull Electric to withdraw or amend its counterclaim. The court made a factual determination that Curry could not have made a reasonable inquiry because the counterclaim never had any factual support. Curry does not argue that the facts presented as the basis for the counterclaim were supported in fact. Instead, he argues that the factual allegations made in the counterclaim were reasonable under the circumstances.

Curry contends that the appropriate time to measure reasonableness of the inquiry is at the time of filing the pleading. He argues that, at the time pleadings were filed, many extenuating circumstances impeded his inquiry. Curry also argues that his abandonment of certain factual contentions in his counterclaim allow him to avoid Rule 11 sanctions, even though he failed to amend or correct the initial pleadings. For these reasons, Curry believes that the district court failed to apply the proper legal standards to his conduct and abused its discretion by imposing

sanctions without making the requisite factual determinations.

By focusing on the time of filing, Curry misunderstands what conduct constitutes the gravamen of the sanctions. Curry filed a counterclaim based upon facts that were supported only by an affidavit that he prepared for Pamela Lee. Lee later disavowed any knowledge of the October 1994 decision made by Local 134, which the court found was the factual basis for Krull Electric's counterclaim. As the counterclaim's lack of factual foundation became apparent to all parties involved, Trustees asked that the counterclaim be withdrawn so that their claim could be dismissed. By this time, Curry admits that he had abandoned the original factual basis of the counterclaim, the October 1994 termination of CBA signatory status, in favor of other arguments against Trustees. However, Curry and Krull Electric refused to withdraw or amend the counterclaim, imposing an additional year of meaningless proceedings on the court and Trustees.

At the conclusion of these proceedings, Judge Lindberg found as a matter of fact that the factual contentions upon which the counterclaim (never amended or withdrawn) was based were unsupported and meritless. The court found that Curry had failed to perform a reasonable inquiry at any point throughout the proceedings to determine whether these pleadings should have been corrected or withdrawn. Failure to withdraw or amend a counterclaim that Curry knew lacked any factual basis demonstrates that Curry never performed a reasonable inquiry into Krull Electric's counterclaim before presenting it to the court at trial. Curry's abandonment of the facts that supported his counterclaim does not alleviate the need to sanction him; it compounds that need. We find no error in the district court's findings of fact.

The district court also found that Curry's initial answer to Trustees' claim violated Rule 11(b)(4) because Krull Electric had admitted many of the facts in prior litigation between the same parties that it denied knowledge of here. Curry contends that he lacked any basis on which to ascertain that the facts which Krull Electric admitted previously were accurate. He notes that Krull Electric moved to amend or withdraw certain of these admissions in the other litigation. The trial court found that Curry could not have reasonably believed that Krull Electric had a basis in fact to deny these contentions after admitting them in a related action. Curry does not cite any authority to suggest that such a finding of fact constitutes clear error. He

claims that he had no way of procuring documents from prior counsel on which the prior admissions were based. Yet, Curry appended excerpts from the CBA to the answer, even though he claims that Krull Electric had not received a copy of it. In the counterclaim, he alleged that Trustees committed certain acts, even though Krull Electric denied knowledge of the Trustees' identities in its attached answer. Krull Electric's answer claimed that it had no knowledge of deposition testimony, of which it had a copy, because its transcript of the testimony could have been inaccurate. Based on these types of discrepancies, the court could have found that Krull Electric's refusal to make certain admissions was patently unreasonable. We find no clear error in the district court's findings of fact.

C. Application of Sanctions

Curry contends that Rule 11 was not intended to allow fee-shifting, so the district court's sanction of all Trustees' attorneys' fees constituted an abuse of discretion. He also contends that the amount of sanctions awarded violates the Rule 11(c)(2) limitation of fees to those "incurred as a direct result of the violation." Finally, Curry argues that the sanctions constitute a financial hardship. The amount or form of a sanction is reviewable only for abuse of discretion. See Johnson v. A.W. Chesterton Co., 18 F.3d 1362, 1366 (7th Cir. 1994).

Rule 11(c)(2) allows the imposition of attorneys' fees against a party only if the sanctions were initiated by motion. Thus, Judge Lindberg would have abused his discretion if he imposed sanctions sua sponte, pursuant to Rule 11(c)(1)(B). However, as we have discussed, the district court imposed sanctions that were initiated by Trustees' September 1996 motions, pursuant to Rule 11(c)(1)(A). For sanctions initiated by motion, we held, prior to the 1993 amendments to Rule 11, that attorneys' fees may be used as a justifiable measure for Rule 11 sanctions. See Brandt v. Schal Assocs., 960 F.2d 640 (7th Cir. 1992). The 1993 amendments to Rule 11(c)(2) limited the amount of attorneys' fees that may be imposed as a sanction, contemplating the award of reasonable attorneys' fees and costs "incurred as a direct result of the violation," but endorsed the use of attorneys' fees as a sanction. Fed. R. Civ. P. 11(c)(2). We therefore find no basis for the contention that the award of reasonable attorneys' fees constitutes an abuse of discretion.

Curry also claims that, because Krull Electric

presented other affirmative defenses, a trial would have been necessary. For that reason, the district court's blanket award of all attorneys' fees included fees and costs that did not directly result from Curry's sanctionable conduct and, therefore, was unreasonable. Rule 11(c)(2) expressly limits the award of attorneys' fees to those that directly result from a party or attorney's sanctionable conduct, and an award of sanctions should be the least severe that is adequate to serve the purposes of deterrence. See Johnson, 18 F.3d at 1366. Therefore, we examine Judge Lindberg's decision to sanction Curry for the cost of all attorneys' fees generated by this litigation with great care.

The district court found that Curry's sanctionable conduct "infected" the entire proceeding. Accordingly, the court sanctioned Curry by imposing on him the cost of all attorneys' fees claimed by Trustees. We cannot accept the court's suggestion that all Trustees' legal expenses were costs directly resulting from Curry's sanctionable activities. Trustees were the plaintiffs in the suit against Krull Electric and incurred legal expenses before Curry played any part in this litigation. Neither Curry nor Krull Electric could have engaged in sanctionable conduct before they were served with Trustees' complaint in the matter before Judge Lindberg. Because the award of all attorneys' fees wrongly includes fees even from the period before a complaint was filed against Krull Electric, the award necessarily includes attorneys' fees that do not result directly from Curry's sanctionable conduct. For this reason, the sanction imposed on Curry violates Rule 11(c)(2) and constitutes an abuse of discretion.

Although we affirm the district court's decision to impose sanctions, we reject the blanket award of attorneys' fees. See Johnson, 18 F.3d at 1366 (finding that awarding attorneys' fees may be a normal method to calculate sanctions, but "the deterrent purpose of the rule should be served by impos[ing] a sanction that fits the inappropriate conduct"). In 1993, Rule 11(c)(2) was amended to limit the extent that attorneys' fees may be used as a measure of sanctions for exactly this reason. See Fed. R. Civ. P. 11, 1993 Amendment Advisory Committee's Note ("Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into the court as a penalty."). Although we understand the court's desire to compensate Trustees, who have been ensnarled in months of litigation with a nearly insolvent adversary, the imposition of all attorneys' fees against Curry is an inappropriate attempt to calculate a

reasonable sum for purposes of deterrence.

The district court is in the best position to determine which of a party's legal costs are the direct result of sanctionable conduct, so a remand to the district court is necessary. We add a cautionary note, however, on remand. In using attorneys' fees to determine the amount of sanctions, that amount must be limited to fees incurred as a direct result of the response and counterclaim filed by Curry. See Fed. R. Civ. P. 11(c)(2). As a matter of guidance, we note that these fees would naturally include any research conducted into the sole issue raised in Curry's counterclaim, the purported LMRA violation, but they cannot include such activities as the cost of deposing witnesses like Pamela Lee, who Trustees would have deposed without regard to the frivolous counterclaim filed on her behalf by Curry. In addition, because Trustees noted that the denials made in the response were directly at odds with admissions made in other litigation between the parties, we see no reason why these sanctionable denials would directly cause Trustees to generate additional attorneys' fees.

III.  Conclusion

On appeal, Curry never convincingly argues that his conduct was not sanctionable. Instead, he focuses on the procedure that the district court used to impose sanctions and on the amount of sanctions imposed on him personally. Because we find that the record presents sufficient evidence for the imposition of Rule 11 sanctions and the district court effectively followed the notice procedures required by Rule 11(c)(1)(A), we AFFIRM the decision of the district court to impose sanctions. However, because we find that the amount of the sanction is inappropriate, we VACATE the award of attorneys' fees and costs and REMAND to the district court to reconsider the appropriate amount of attorney's fees to award as a sanction.