**In re Charles and Janet PINCOMBE, Debtors.**

**No. 99 B 33119.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Dec. 7, 2000.

Kerry M. Lavelle, Theodore M. McGinn, Chicago, IL, for Plaintiff.

Christopher Garcia and Office of the Attorney General, Chicago, IL, for Respondents.

## MEMORANDUM OPINION

SUSAN PIERSON SONDERBY, Chief Judge.

Charles and Janet Pincombe, (the "Debtors") brought this Motion to Hold Persons in Contempt against Respondents Susan Landman ("Landman"), the law firm of Pontikes and Garcia[1] and the Illinois Department of Human Rights, (the "IDHR"). The Motion seeks to hold the Respondents in civil contempt for violation of the automatic stay provision under § 362(a) and the post-discharge injunction under § 524(a) of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Code"). The Debtors seek an order of the Court: (1) terminating ongoing administrative proceedings against Charles Pincombe ("Pincombe"), (2) awarding costs, expenses, and attorney's fees and expenses incurred in

connection with this Motion, and (3) awarding other unspecified damages to Pincombe.

Landman and the IDHR have filed briefs in opposition to the Motion, and the Equal Employment Opportunity Commission, (the "EEOC") has filed an amicus brief on behalf of the Respondents. Landman also seeks sanctions against Pincombe for malicious prosecution pursuant to Fed. R.Civ.P. 11.

## BACKGROUND

The controversy at issue arises from a default order entered by the IDHR against Northwest Builders and Remodelers, Inc., and its owner, Pincombe. After the IDHR took that action, its order was served upon the Illinois Human Rights Commission, ("IHRC"). The IHRC in turn entered an order of default against Pincombe on June 29, 2000. Significantly, both orders were entered after this Court granted Pincombe's Chapter 7 discharge.

The IDHR's order of default was entered on a charge filed on February 8, 1999 by Landman, an employee of Northwest Builders, for sex discrimination, sexual harassment and retaliatory discharge. In her charge, Landman alleged that Pincombe sexually harassed and assaulted her during her employment with his company. Landman further alleged that Pincombe ultimately discharged her in retaliation for her resistance to his sexual advances. Pincombe has denied all allegations.

Although there is some question whether Pincombe received advance written notice informing him of the date when the IDHR had scheduled a fact finding conference on Landman's charge, Pincombe acknowledges that on April 1, 1999, the IDHR notified his former attorney by telephone of a fact finding conference. At that time, Pincombe's attorney stated that

---

1. Pontikes and Garcia are the attorneys representing Landman in the Illinois Department of Human Rights administrative proceedings

against Charles Pincombe and Northwest Builders and Remodelers, Inc. To simplify the discussion here, references made to

Pincombe would attend the conference. The fact finding conference was held on June 22, 1999. Landman attended the conference, but Pincombe failed to appear.

On July 15, 1999, Northwest Builders filed a petition for relief under Chapter 7 in Chicago and the Debtors filed for Chapter 7 relief in Rockford. Landman was listed as a creditor in both cases, and the statement of affairs in each case disclosed the pendency of the IDHR's investigation of Landman's discrimination and retaliation charges.

Notices sent in both bankruptcy cases informed creditors of the automatic stay. Further, notices to the creditors in Pincombe's individual case advised them that the deadline for filing dischargeability complaints was October 18, 1999. Although listed as a creditor on both petitions, Landman never filed a nondischargeability complaint.

On August 19, 1999, the IDHR called Pincombe to inquire about his failure to attend the June 22, 1999 fact finding conference. At that time, Pincombe allegedly told the IDHR's representative that he had been unaware of the date of the conference. During the conversation, the IDHR alleges that it requested that Pincombe put his reasons for failure to attend the conference in writing. Subsequently, Pincombe has made contradictory statements as to whether the IDHR requested a written explanation for his failure to attend the fact finding conference.[2]

On or about December 28, 1999, the IDHR sent Pincombe a notice to show cause why an order of default should not be entered due to his failure to provide the IDHR with a written explanation for his failure to attend the fact finding conference. In response, Pincombe allegedly sent a letter dated January 2, 2000 to IDHR investigator Charlie Branch. In that letter, Pincombe acknowledged receipt of the IDHR's notice to show cause. Pincombe also stated in his letter that on or about June 22, 1999 he expressed to Mr. Branch that "due to his pending bankruptcies that he had lost contact with his attorney and that the Fact Finding conference date was not clear to him." Pincombe further stated that if a new fact finding conference would be scheduled, "he would guarantee his appearance with or without representation."

According to Pincombe, on or about January 15, 2000, he forwarded a copy of the automatic stay and notice of the creditors' meeting for both his individual case and that of Northwest Builders to Mr. Branch. In ¶ 6(c) of their motion for contempt, the Debtors acknowledge that on January 20, 2000, the IDHR sent Pincombe a Notice of Default for failure to attend the fact finding conference and for failure to show cause.

On March 28, 2000, this Court granted a discharge to Pincombe under § 727(a) of the Code. Although Pincombe's bankruptcy case was not closed until April 26, 2000, § 362(c) provides that in an individual case under Chapter 7, the automatic stay continues only to the earliest of the time the case is closed or the time at which the debtor is granted a discharge. In this case, the automatic stay terminated on March 28, 2000, the date Pincombe was granted a discharge by this Court.

On April 17, 2000, the IDHR's Chief Legal Counsel entered an order of default against Pincombe for his failure to attend the June 22, 1999 fact finding conference and for failure to show cause. The order was served upon the IHRC for proceedings under § 7–101.1(C) of the Human Rights Act.

On April 19, 2000, the IDHR filed a Petition for Hearing to Determine Complainant's Damages with the IHRC. Pin-

"Landman" shall include Pontikes and Garcia.

**2.** In ¶ 6(a) of his motion for contempt, the Debtors acknowledge that the IDHR requested that Pincombe submit his reasons in writ-

ing for failure to attend the fact finding conference. However, in his written response to the IDHR's December 28, 1999 notice to show cause, Pincombe denied that this request was ever made by the IDHR.

combe acknowledges receipt of a copy of the Petition on or about April 19, 2000.

On April 26, 2000, Mr. Theodore McGinn, counsel for Pincombe, sent a letter to the IDHR via certified mail, requesting that all current proceedings pending on behalf of Landman be terminated since Pincombe had been discharged in bankruptcy and any liability that might have existed related to Landsman's claim had been discharged. Landman along with her attorney were copied on the letter.

On June 29, 2000, the IHRC also entered its own order of order of default against Pincombe pursuant to the IDHR's Petition for Entry of Default Order. Upon the entry of the IHRC's default order, the matter was transferred an administrative law judge for a hearing to determine the amount of damages and for further proceedings not inconsistent with the default order.

The Debtors allege that on several occasions in July and August 2000, their attorney contacted the IDHR and counsel for Landman and again reiterated their request to have all proceedings on Landman's charge terminated. According to the Debtors, both the IDHR and Landman refused Pincombe's request to terminate the administrative proceedings against him.

The pleadings contain no allegations that Landman's activities included anything more than filing a charge with the IDHR and appearing at the fact finding conference. Both activities occurred prior to Pincombe's Chapter 7 filing. The Debtors contend that Landman violated the automatic stay because she refused to withdraw her IDHR charge, and they allege that the subsequent investigatory actions by the IDHR were in violation of the automatic stay.

In her response, Landman states that at no time during the pendency of the IDHR proceedings has she ever made a demand for monetary damages against Pincombe.

Landman asserts that she merely wants a substantive hearing concerning Pincombe's illegal actions and a finding that he violated the Illinois Human Rights Act. According to Landman, she seeks an official record of Pincombe's "sexual harassment, assault and illegal retaliation."

If the state administrative proceedings go forward, the EEOC will ultimately be involved in this matter. In its amicus brief, the EEOC states that Landman's IDHR charge against Pincombe was automatically cross-filed with the EEOC pursuant to a Worksharing Agreement between the two agencies. The EEOC states that it has held the charge in suspension pending the completion of the IHRC's damage proceedings against Pincombe. Upon conclusion of those proceedings, the EEOC will review the findings of the IDHR and IHRC and make a determination on the final resolution of Landman's charge.

It is not clear whether the governmental agencies will seek only declaratory or injunctive relief, or whether they will seek to enforce a money judgment against Pincombe. The EEOC and Landman defend against the Debtors' allegations of violation of the automatic stay by relying on Code § 362(b)(4), which creates an exception to the automatic stay provision for the "commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." Respondents argue that since governmental agencies are involved in the investigation of the charges brought against Pincombe, this is an action to eradicate discrimination for the benefit of the public interest, rather than a private cause of action for damages.

The Debtors respond to this argument by stating that the "IDHR has never requested a fine, penalty, or injunction" against Pincombe, and that the agency's efforts have been focused towards the award of monetary damages on behalf of Landman.

In their motion for a finding of contempt, the Debtors seek damages for both violation of the automatic stay and violation of the discharge injunction against Landman, Pontikes and Garcia, and the IDHR. The Debtors also seek an order terminating all administrative proceedings on behalf of Landman.

## DISCUSSION

This motion seeks to enjoin an administrative proceeding that began before the automatic stay was in effect, and was not completed before Pincombe received his discharge in bankruptcy. With respect to the period that preceded their discharge, the Debtors move under Code § 362(h) for sanctions for violation of the automatic stay. Because the administrative proceedings continued after the Debtors' discharge, there is also a question as to whether ongoing proceedings violate the post-discharge injunction under Code § 524(a).

*Alleged Violation of the Automatic Stay*

The automatic stay provision under § 362(a) of the Bankruptcy Code provides in relevant part:

(a) "Except at provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a

judgment obtained before the commencement of the case under this title . . .;"

11 U.S.C. § 362(a).

 It is fundamental that the automatic stay provision under § 362(a) protects the status quo as of the date of the bankruptcy filing. *Carlson v. U.S.*, 126 F.3d 915, 923 (7th Cir.1997). It precludes and nullifies "post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor" or affecting the assets of the bankruptcy estate. *In re Flack*, 239 B.R. 155, 162 (Bankr.S.D.Ohio 1999).

 Under § 362(h), "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). If it is determined that a party has willfully violated the automatic stay, the award under § 362(h) is mandatory, rather than discretionary. *Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods, Inc.)*, 186 B.R. 414, 437 (N.D.Ill.1995).

 However, an exception exists under the automatic stay provision. Under § 362(b)(4), enforcement of a governmental unit's police or regulatory power is excepted from the automatic stay. Section 362(b)(4) provides in relevant part:

(b) "The filing of a petition under section 301, 302, or 303 of this title, . . . does not operate as a stay . . .

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power . . ."

11 U.S.C. § 362(b)(4).

Looking to whether the proceedings on Landman's charge fall within the exception under Code § 362(b)(4), it is well-established that an action of this nature is a matter within governmental authorities' regulatory power. In Landman's re-

sponse, she cites *EEOC v. Rath Packing Co.*, 787 F.2d 318, 325 (8th Cir.1986), which held that an EEOC proceeding on a charge of discrimination in hiring fell within the exception of § 362(b)(4). *Rath* concluded that the automatic stay was inapplicable, reasoning that "when the EEOC sues to enforce Title VII it seeks to stop a harm to the public—invidious employment discrimination which is as detrimental to the welfare of the country as violations of environmental protection and consumer safety laws, which are expressly exempt from the automatic stay." *Id. See also NLRB v. P\*I\*E Nationwide, Inc.*, 923 F.2d 506, 512 (7th Cir.1991) (labor relations proceeding in which employee sought backpay on account of retaliatory discharge was excepted from stay).

■ If an action falls within the scope of the exception, § 362(b)(4) permits entry of a money judgment, so long as the proceedings do not go beyond that point. *Securities and Exchange Comm'n v. Brennan*, 230 F.3d 65, 71 (2d Cir.2000). The fact that an order may ultimately be entered affecting the bankruptcy court's control over property is not enough to stop action expressly exempted from the stay. *Board of Governors of Federal Reserve System v. MCorp. Financial, Inc.*, 502 U.S. 32, 41, 112 S.Ct. 459, 464, 116 L.Ed.2d 358 (1991). Also, because the exception takes effect immediately, a governmental agency exercising its police or regulatory power under § 362(b)(4) is not required to motion the court for relief from the stay prior to continuing proceedings against a debtor. *United States v. Acme Solvents Reclaiming, Inc.*, 154 B.R. 72, 73 (N.D.Ill. 1993).

■ Applying these principles here, neither the facts nor the case law support the Debtors' contention that the IDHR violated the automatic stay by continuing the administrative proceedings on Landman's charge after Pincombe filed for bankruptcy relief. As discussed above, the case law is clear that proceedings on a charge of employment discrimination fall within the exception under Code § 362(b)(4) provided that no action is taken beyond entry of a money judgment. Since proceedings to date have not reached the point where judgment is entered, the IDHR has not violated the automatic stay.

■ There remains the question whether Landman might have violated the automatic stay even though the IDHR's actions were exempt under § 362(b)(4). With respect to that question, Respondents correctly observe that there is no evidence or allegations that Landman took affirmative action in pursuit of her discrimination charge in the period between the date of the Debtors' bankruptcy filing and the date the Debtors were discharged. Landman did not file a lawsuit on her own behalf, and there are no allegations or evidence that she even communicated with the Debtors during the period before their discharge.

Landman's first act of participation with the IDHR occurred on February 8, 1999 when she filed her charge against Pincombe. This act occurred more than five months before the automatic stay became effective. Landman's next activity took place on June 22, 1999 when she attended a fact finding conference related to her charge against Pincombe. This conference took place nearly a month before Pincombe's Chapter 7 filing. Because both the filing of the charge and the fact finding conference occurred prior to Pincombe's filing for Chapter 7 protection on July 15, 1999, those actions necessarily could not have violated the automatic stay.

■ The only question, then, becomes whether Landman's acquiescence to the continuation of the proceedings before the IDHR might have violated the stay. While the Debtors contend that Landman's refusal to withdraw her charge after filing for bankruptcy protection violated the automatic stay, they cite no authority to support that proposition. Although this Court's research has not found cases addressing that specific proposition either, a

review of applicable regulations suggests that the Debtors' argument lacks merit.

The withdrawal of a discrimination charge is governed by the Code of Federal Regulations which provides: "A charge filed by or on behalf of a person claiming to be aggrieved may be withdrawn only by the person claiming to be aggrieved and only with the consent of the Commission." 29 C.F.R. § 1601.10 (2000). "If the EEOC does not consent to the withdrawal of a charge, it may proceed on its own initiative to prosecute a civil action . . ." *EEOC v. Harvey L. Walner & Assoc.,* 91 F.3d 963, 969 (7th Cir.1996). "The EEOC has a right to sue independent of any private plaintiff's rights . . . to vindicate the public interest in preventing employment discrimination . . ." *General Telephone Co. v. EEOC,* 446 U.S. 318, 326, 100 S.Ct. 1698, 1704, 64 L.Ed.2d 319 (1980).

The language of 29 C.F.R. § 1601.10 makes it clear that the EEOC can act upon its own authority to adjudicate discrimination claims without Landman's participation. Whether Landman voluntarily withdrew her claim or not, this would not end the EEOC's power to pursue its own right of action against Pincombe. This being so, and because there are no allegations or evidence that Landman took independent action outside of the administrative proceedings, the record does not support the Debtors' contention that Landman violated the automatic stay.

 In order to recover damages under Code § 362(h), the Debtors have the burden of establishing the following elements by a preponderance of the evidence: (1) that a bankruptcy petition was filed, (2) that debtors are "individuals" under the automatic stay provision, (3) that creditors received notice of the petition, (4) that creditors' actions were in willful violation of the stay, and (5) that "debtors suffered damages." *In re Flack,* 239 B.R. at 162–163. Willfulness under § 362(h) requires knowledge that a bankruptcy petition has been filed, whether through formal notice or otherwise. *In re Fridge,* 239 B.R. 182,

190 (Bankr.N.D.Ill.1999) (citing *Price v. Rochford,* 947 F.2d 829 (7th Cir.1991)). Specific intent to violate the automatic stay need not be found. *In re Bloom,* 875 F.2d 224, 227 (9th Cir.1989).

While Respondents do not dispute that the Debtors can establish the first two of the elements under § 362(h), the IDHR contends that it did not receive notice of Pincombe's bankruptcy until after he had been discharged. Notwithstanding this factual dispute, further discussion on the question of violation of the stay are unnecessary. Because the Debtors have failed to allege or present evidence of actions that violated the automatic stay, their request for relief under § 362(h) is denied.

### *Alleged Violation of the Post– Discharge Injunction*

The permanent discharge injunction arises under § 524(a) of the Bankruptcy Code, which provides in relevant part that "[a] discharge in a case under this title-

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;"

11 U.S.C. § 524(a)(1)–(2).

 A willful violation of the post-discharge injunction § 524 is punishable by contempt sanctions. *In re Andrus,* 184 B.R. 311, 315 (Bankr.N.D.Ill.1995). The burden of proof is on the former debtor to establish by clear and convincing evidence that creditor violated the post-discharge injunction. *Id.*

The appropriate standard to apply to determine whether a violation of the post-discharge injunction was willful is for the court to focus not on the subjective intent of the alleged violators, but rather on whether their conduct complied with the discharge order. *In re Cherry, III,* 247 B.R. 176, 187 (Bankr.E.D.Va.2000). *See also Hardy v. United States (In re Hardy),* 97 F.3d 1384, 1390 (11th Cir.1996). The test applicable to the determination of a willful violation of the automatic stay under § 362 is equally applicable to the determination of willful violation of the post-discharge injunction under § 524. *Id.* at 1389. *Hardy* held that the defendant would be found in contempt of the post-discharge injunction if: (1)(s)he knew of the post-discharge injunction and, (2) intended the actions which violated the injunction. *Id.* at 1390.

In its amicus brief, the EEOC[3] argues that the post-discharge injunction does not apply to the regulatory powers of the agency. As the EEOC frames the issue, "an employee's right to communicate with the EEOC must be protected not to safeguard the settling employee's entitlement to recompense but instead to safeguard the public interest." The EEOC further asserts that by protecting employees' right to communicate acts of employment discrimination to state and federal enforcement agencies, the agencies can fully investigate such charges for the benefit of the public interest in eradicating employment discrimination.

This Court agrees that if administrative proceedings in pursuit of a governmental entity's regulatory powers are excepted from the automatic stay, continuation of the same proceedings after a debtor's discharge should not violate the post-discharge injunction under § 524(a). Importantly, though, it is clear under the case law that proceedings excepted from the stay under § 362(b)(4) may not continue beyond the entry of a monetary judgment. Just as there is concern that administrative proceedings not interfere with the Bankruptcy Court's control over disposition of property of the estate, in the post-discharge context there is concern that ongoing administrative proceedings not interfere with the debtor's discharge.

Here the Debtors argue that Landman's IDHR charge asserts a claim for willful and malicious injury by Pincombe and that any debt attributable to his conduct has been discharged due to Landman's failure to file a timely complaint under § 523(a)(6). *See, e.g., In re Mendiola,* 99 B.R. 864 (Bankr.N.D.Ill.1989). At the same time, the Debtors acknowledge that if the debt were a "fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and . . . not compensation for actual pecuniary loss," it would be nondischargeable under § 523(a)(7). Since neither Landman nor the IDHR has filed a dischargeability complaint, at this point in time, it is unnecessary to reach the issue whether Respondents' seek to circumvent the scheme under the Code for determination of the dischargeability of prepetition debts.

Looking separately to what each Respondent seeks to accomplish in the administrative proceeding, Landman denies that she seeks an award of money damages from Pincombe. Instead, Landman states that she seeks only an official record that Pincombe's alleged conduct of sexual harassment, assault and retaliatory dis-

3. Landman's charge was cross-filed with the IDHR and the EEOC. Under the agencies' Worksharing Agreement, when the IDHR completes the processing of an employment discrimination charge, it submits its investigation, including the relief provided, if any, to the EEOC for a "substantial weight" review. While this means that the EEOC would ultimately become involved with the administrative proceedings in connection with Landman's charge, it might be noted that the agency has a right to bring actions for monetary damages on behalf of individual claimants. *EEOC v. Harris Chernin, Inc.,* 10 F.3d 1286, 1291 (7th Cir.1993).

784

charge violated the Illinois Human Rights Act. There being no evidence contradicting Landman's assertions, the Debtors have not proven that Landman is attempting to collect a discharged prepetition debt.

■ The IDHR and the EEOC have not articulated what form of relief they are seeking against Pincombe. Without evidence that proceedings to date have progressed beyond entry of a money judgment, the Debtor has not shown that IDHR has attempted to collect a prepetition debt, or that there is a need to enjoin future proceedings before the agencies. Accordingly, Pincombe's request for sanctions for violation of the discharge injunction is denied.

*Landman's Request for Sanctions*

■ Lastly, the Court addresses Landman's request of this Court to impose Rule 11 sanctions against Pincombe for malicious prosecution of a frivolous suit pursuant Fed.R.Civ.P. 11. Under Rule 11(c)(1)(A), "sanctions proceedings may be initiated in two ways, by motion or at the initiative of the trial court." *Divane v. Krull Electric Co., Inc.*, 200 F.3d 1020, 1025 (7th Cir.1999). When sanctions are requested upon a party's motion, two requirements must be met: (1) the motion must be made separate and apart from other motions or requests and "[must] describe the specific conduct alleged to violate" representations to the court, and (2) "the motion may not be presented to the court unless, within twenty-one days of service, the non-movant has not withdrawn or corrected the challenged behavior." *Id.* Permitting a motion for sanctions "in conjunction with another motion constitutes an abuse of discretion." *Id.*

■ Without expressing any conclusion on the substantive question whether the Debtor's arguments lack a basis in fact or in law, this Court denies Landman's request. In this case, Landman's request for sanctions under Rule 11 was not pre-sented to this Court as a separate motion. In addition, there is no evidence that Landman made a demand that the Debtors correct or withdraw their motion. Since Landman has not satisfied the procedural requirements under Rule 11(c)(1)(A), her request for sanctions under for malicious prosecution under Fed.R.Civ.P. 11 is denied.

## CONCLUSION

For the reasons set forth above, the Debtors' motion to hold Landman, Pontikes and Garcia, and the IDHR in civil contempt for violation of the automatic stay under § 362 and the post-discharge injunction under § 524 of the Code is denied. Landman's request for sanctions under Fed.R.Civ.P. 11 (Fed.R.Bankr.P. 9011) is also denied.