**Marcia HARRIS, Plaintiff,**

v.

**FRANKLIN–WILLIAMSON HUMAN SERVICES, INC., Laborers' International Union of North America, Southern Illinois Laborers' District Council, Randall J. Mayhew, Defendants.**

No. CIV. A. 98–4290–DRH.

United States District Court, S.D. Illinois.

May 11, 2000.

Charles M. Poplstein, Rodney A. Harrison, Thompson Coburn, St. Louis, MO, for Marcia Harris, plaintiffs.

Kevin J. Lorenz, Burton D. Garland, Jr., McMahon, Berger et al., St. Louis, MO, for Franklin–Williamson Human Services Inc.

Michael W. O'Hara, Patrick J. O'Hara, Cavanagh & O'Hara, Springfield, IL, for Laborers' International Union of North America, Southern Illinois Laborers' District Council, Randall J. Mayhew.

## MEMORANDUM AND ORDER

HERNDON, District Judge.

### I. *Introduction*

Pending before the Court are Defendants' three motions for summary judgment and Defendants' three motions for sanctions pursuant to Federal Rule Of Civil Procedure 11 and 28 U.S.C. § 1927 against Marcia Harris and her attorneys (Docket Entry Nos. 88, 98, 105, 62, 120, and 124, respectively). As to the motions for summary judgment, Defendants maintain that they are entitled to summary judgment on all counts of Harris' First Amended Complaint. Specifically, they maintain that Harris has not established a prima facie case under any of the counts.

As to the sanctions, Defendants assert that Harris filed this lawsuit for the sole purpose of harassing Defendants, causing undue delay, and needlessly increasing the costs of litigation. Specifically, they maintain that many of the allegations in her First Amended Complaint are not supported by the evidence and that Harris and her attorneys knew that some of the allegations were not supported by evidence when they filed the First Amended Complaint. Harris objects to Defendants' request for sanctions arguing that she and her attorneys have acted in good faith throughout the litigation. Furthermore, Harris contends that Defendants' failure to recognize the twenty-one day "safe harbor" rule contained in Rule 11 merits denial of their motions for sanctions. Having reviewed the pleadings and the applicable case law, the Court rules as follows.

## II. *Procedural Background*

Initially, Marcia Harris filed suit against Franklin–Williamson Human Services, Inc. ("FWHS"), Laborers' International Union of North America ("LIUNA"), Southern Illinois Laborers' District Council ("SILDC"), and Randall Mayhew ("Mayhew") on September 16, 1998 (Docket Entry No. 1). Subsequently, Harris filed a five-count amended complaint against Defendants (Docket Entry No. 3). The First Amended Complaint alleges: (a) sexual discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count I); (b) sexual harassment and retaliation pursuant to Title VII (Count II); (c) age discrimination pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA") (Count III); (d) violations of the Violence Against Women Act, 42 U.S.C. § 13981 *et seq.* ("VAWA") (Count IV); and (e) tortious interference of contract (Count V). Counts I, II and IV are against all Defendants; Count III is against FWHS and Count V is against LIUNA, SILDC and Mayhew.

On February 17, 1999, the Court heard oral argument on several of Defendants' motions to dismiss and for summary judgment and took the matters under advisement. In March of 1999, the Court denied FWHS' motion for partial summary judgment; Mayhew, LIUNA and SILDC's motion to dismiss and/or summary judgment; and FWHS' motion to dismiss, to strike or for more definite statement (Docket Entry Nos. 40, 41 and 42, respectively).

The parties proceeded with discovery and in April 1999, Harris' deposition was taken. In all, the parties deposed nineteen people from May 1999 to June 1999. After reviewing the depositions, Defendants Mayhew, LIUNA and SILDC *served* Harris' attorneys with their Rule 11 sanctions on May 25, 1999. In response to the sanctions, Harris filed a motion for leave to file a second amended complaint on June 15, 1999 (Docket Entry No. 56). On June 16, 1999, Mayhew, LIUNA and SILDC filed Rule 11 sanctions with the Court (Docket Entry No. 62). Subsequently, Defendants moved for summary judgment on all counts of the First Amended Complaint (Docket Entry Nos. 88, 98 and 105).

On August 16, 1999, the Court held a hearing on Harris' motion for leave to file a second amended complaint. The Court orally denied the motion for to leave file a second amended complaint finding:

> I've seen a lot of cases where individuals, such as the plaintiff in this case, come to me or the magistrates and complain about all of the fishing expeditions that defense wants to take and how they want to go into discovery, that they shouldn't be allowed, because the standard argument is that the plaintiff's lawyer is not getting paid by the hour and the defendant's lawyer is. But this case is extraordinarily different because here we have the plaintiff coming in, an individual who says they should have gone on a fishing expedition because they should have known that I would have gone from specific allegations to general allegations and try to open this thing up simply because I couldn't prove it against one guy. I now want to see who else is out there and open this thing wide open, so they should have contemplated that and given me and done the discovery in advance. I think it's a disingenuous argument.
>
> I think that it is clear in this case that the defendants, the employer and the other defendants would be extraordinarily prejudiced by the amendment of this complaint because they, at the very least, would have to come in and ask for an extension of time for discovery. If I didn't grant it, they would be stuck. If I granted it, they would be delayed. The motion is simply denied.

(August 16, 1999 hearing on motion for leave to file second amended complaint, pages 44–45, lines 24–23).

Also during the August 16, 1999 hearing, the Court orally granted FWHS leave to

file Rule 11 sanctions and 28 U.S.C. § 1927 sanctions. On September 20, 1999, FWHS moved for sanctions pursuant to both Rule 11 and 28 U.S.C. § 1927 (Docket Entry No. 120). Following suit, Mayhew, LIUNA and SILDC also moved for sanctions pursuant to 28 U.S.C. § 1927 on September 27, 1999 (Docket Entry No. 124).

### III. *Facts*

Harris began working for FWHS in 1978. In 1989, she was promoted to the position of Director of Rehabilitation Services. In September of 1994, the employees of FWHS elected to become members of SILDC. Mayhew was the Director of Organizing in charge of the union organization and campaign at FWHS. Harris alleges that Mayhew committed numerous offensive acts against her and that she made repeated complaints to FWHS during her employment about Mayhew.

Specifically, Harris alleges that on September 20, 1994, Mayhew assaulted, intimidated and harassed her while she was working at the Rehabilitation Center and that after the September 20, 1994 incident, Mayhew threatened, assaulted, intimidated, sexually harassed and/or stalked Harris on more than one occasion on the premises of FWHS' Rehabilitation Center. Harris' complaint further alleges that on or about September 20, 1994, Mayhew contacted Kenneth Bleyer, an attorney for FWHS, and told Bleyer that he controlled the County Boards in Franklin and Williamson Counties and that unless Harris was fired, Mayhew would make things difficult for FWHS with respect to its position with the union, and after that Mayhew threatened FWHS with adverse union actions, including strikes, if FWHS did not discipline, discharge, demote or otherwise make things difficult for Harris.

She further asserts that agents and/or employees of Defendants, including Mayhew, did the following: (1) assaulted, intimidated, stalked and harassed her; (2) circulated a letter falsely implying that she had been tested for herpes; (3) circulated a flyer depicting her as a witch; (4) circulated a picture of a nude female with "call Marcia 618–996–3082" written on it; and (5) circulated a document entitled "The Great American Bitch Award" which named Harris as the recipient and stated the award was given to her for "being a c___t." Harris also claims that in January 1996, she informed First Amended Complaint Markley, then acting administrator of FWHS, that Mayhew made or caused to be made threatening comments to her and threatened to shoot her. She claims that right after she and Markley talked, Markley issued her two written reprimands regarding her handling of a union grievance.

At the end of June 1997, Harris initiated contact with an individual named Jimmy Fulks.[1] Harris had read news articles about Fulks' problems with Defendants. Feeling that they had something in common, Harris and Fulks developed a relationship. Eventually, Harris met with

---

**1.** Around 1989, Fulks began operating a business called Mariah Boat. At that time, Mayhew attempted to organize the employees working for Fulks at Mariah. Mayhew's organizing attempt was unsuccessful. This organization attempt caused personal problems between Fulks and Mayhew. In April 1997, Mayhew began a drive to organize another of Fulks' businesses, Chariot Marine Fabricators. Two weeks after Mayhew started his organizing efforts, Fulks closed Chariot after he caught Mayhew meeting with workers on a lunch break. The Union complained to the NLRB which issued a complaint accusing Mariah of illegally closing the business in part to "chill unionism at the Mariah facility."

Thompson Coburn represented Fulks and Mariah at the proceedings before the NLRB. Ultimately, the NLRB determined that Fulks had illegally fired workers from Chariot. Subsequently, Fulks and Mariah, by and through their attorneys, Thompson Coburn, filed a lawsuit in the Southern District of Illinois against Mayhew and LIUNA for violations of the RICO statute. The Honorable J. Phil Gilbert dismissed with prejudice Fulks and Mariah's cause of action for failure to state a claim upon which relief can be granted. *See Mariah Boat, Inc. v. Laborers Int'l Union of North America,* 19 F.Supp.2d 893 (S.D.Ill.1998).

Fulks and his partner, corporate counsel, Paul Schoen. Fulks is paying for Harris' legal bills in connection with this suit.[2]

Subsequently, in July of 1997, FWHS transferred Harris from her position of Director of Rehabilitation Services and assigned her to the position of Director of Development and Marketing. At this time, Harris was 49 years old and replaced (in the interim) by Karen Freitag, age 44.[3] Ultimately, the position was filled by Robert G. Ford, age 44. Harris maintains that she was transferred from her position as Director of Rehabilitation Services because of her sex, her age and in retaliation. Harris alleges that this transfer was an adverse employment action. She also alleges that her new office was infested with roaches.

## IV. *Summary Judgment*

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1218 (7th Cir. 1984).[4] The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *Tregenza v. Great American Communications Co.*, 823 F.Supp. 1409, 1411 (N.D.Ill.1993), aff'd, 12 F.3d 717 (7th Cir.1993), cert. denied, 511 U.S. 1085, 114 S.Ct. 1837, 128 L.Ed.2d 465 (1994).

In reviewing a summary judgment motion, the Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual

issue for trial. *Harms v. Godinez*, 829 F.Supp. 259, 261 (N.D.Ill.1993). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accord *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991).

In a 1995 case, the Seventh Circuit noted that this standard should be applied "with added rigor" in employment discrimination cases, in which intent and credibility are crucial issues. See, e.g., *DeLuca v. Winer Industries, Inc.*, 53 F.3d 793, 797 (7th Cir.1995) (quoting *Robinson v. PPG Industries, Inc.*, 23 F.3d 1159, 1162 (7th Cir.1994) and *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993)). *DeLuca* affirmed prior Seventh Circuit pronouncements that in employment discrimination cases, which often involve issues of motive and intent, summary judgment must be approached with caution. *Huhn v. Koehring Co.*, 718 F.2d 239, 242 (7th Cir.1983) *Huhn* relied on an earlier case which recognized that, although summary judgment is improper in employment discrimination cases which involve "weighing of conflicting indications of motive and intent,"where a plaintiff has no evidence of discriminatory motive to "put on the scales for weighing," summary judgment *is* appropriate. *Id.*

## V. *Analysis*

### A. *Count I—Sex Discrimination*

Title VII makes it unlawful for an employer to discriminate against an employee

---

**2.** Harris testified that Jimmie Fulks is financing this litigation by advancing her fees 100%. (Harris deposition, page 215). Fulks testified that Paul Schoen is co-counsel with Thompson Coburn on this case and that Schoen can make the directions and make the calls that are necessary for the purpose of prosecuting the lawsuit (Fulks deposition, page 14).

**3.** The record reveals that Freitag was almost 45 years old at the time she replaced Harris in the interim.

**4.** Accord *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Jean v. Dugan*, 20 F.3d 255, 259 (7th Cir.1994).

because of the employee's race or sex. 42 U.S.C. § 2000e *et seq.* The plaintiff must prove that she was a victim of intentional discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). A plaintiff can satisfy her burden of proof in a sex discrimination case in two ways: through direct evidence of discriminatory intent or through indirect evidence demonstrated by the burden-shifting method presented in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Pasqua v. Metropolitan Life Ins. Co.,* 101 F.3d 514, 516 (7th Cir.1996); *Von Zuckerstein v. Argonne Nat'l Lab.,* 984 F.2d 1467, 1472 (7th Cir.1993). Here, Harris has not presented direct evidence of discrimination, and thus the Court turns to the burden-shifting method of *McDonnell Douglas.*

The first step for Harris under the *McDonnell Douglas* method is to establish a prima facie case of sex discrimination. *Gonzalez v. Ingersoll Milling Machine Co.,* 133 F.3d 1025, 1032 (7th Cir.1998); *Pasqua,* 101 F.3d at 516. To establish a prima facie case of sex discrimination, Harris must show: (1) she is in a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) that others, similarly situated but not of the protected class, were treated more favorably. *Morrow v. Wal–Mart Stores, Inc.,* 152 F.3d 559, 561 (7th Cir.1998) (citing *Geier v. Medtronic, Inc.,* 99 F.3d 238, 241 (7th Cir.1996)).

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Cowan v. Glenbrook Sec. Servs., Inc.,* 123 F.3d 438, 445 (7th Cir.1997). Then the burden shifts back to the plaintiff to show the defendant's reason is in fact pretext for discrimination. *Bahl v. Royal Indemnity Co.,* 115 F.3d 1283, 1290 (7th Cir.1997). The ultimate burden of proof remains with the

plaintiff at all times. See *Kirk v. Federal Property Management Corp.,* 22 F.3d 135, 138 (7th Cir.1994).

■ First, the Court must determine whether Harris has established a prima facie case of sex discrimination.[5] Defendants maintain that Harris cannot set forth a prima facie case of sex discrimination. Harris responds that she was moved out of her position as Director of Rehabilitation and replaced by a man because she is a woman. She further argues that there is a genuine issue of fact as to whether she was meeting FWHS' legitimate expectations and whether FWHS' reason for transfer was pretextual. Based on the following, the Court concludes that Harris has failed to establish a prima facie case of sex discrimination.

The Court finds that Harris cannot establish that she suffered an adverse employment action. The Seventh Circuit has defined an adverse action as follows:

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion, evidenced by a decrease in salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Crady v. Liberty Nat. Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993).

Here, Harris was never fired from FWHS, nor was she ever demoted. FWHS approached Harris about transferring after a number of grievances were filed in her division. She expressed interest in the position and eventually applied for and accepted the new position of Director of Development and Marketing. In a letter to Melby, Harris stated that the new job description was acceptable. She

---

**5.** Harris has not presented direct evidence of sex discrimination. Therefore, the Court need only address her sex discrimination claim under the indirect method.

retained the same benefits and the same salary she had in her old position, and her supervisor and her title remained the same. She is the third highest employee of FWHS. Her responsibilities were changed, not diminished. After Harris accepted the new position, her co-employees threw her a going away party and she cleaned out her office. Subsequently, she tried to recant her acceptance of the position. However, Harris' position had been filled by Ms. Freitag. The Court finds that this was not an adverse employment action.

■ Further, Harris can not show that similarly situated males were treated more favorably. Harris argues that Jeff Horton and Robert Ford were similarly situated and treated more favorably than she was. The Court disagrees. Harris was replaced as Director of Rehabilitation, by Ms. Freitag and ultimately, the position was filled by Ford.

As to Horton, the record reveals that Horton was a *supervisor* at the Rehabilitation Center, while Harris was the Director of the Rehabilitation Center and that Horton answered to Harris and Harris answered directly to the Administrator of FWHS. The record also reveals that Horton did not have trouble with the Union, while the record is replete with evidence that Harris did. Clearly, Harris and Horton were not similarly situated.

Next, Harris maintains that Ford was similarly situated to her. She claims that she was not interviewed for the job even though she was qualified. This argument also fails. As stated before, the record reveals that Harris had a history of problems with the Union, while Ford was new to FWHS and he did not have a history of problems with the Union. Harris has not demonstrated that she and Ford were similarly situated. Accordingly, the Court grants Defendants' motions for summary judgment on Harris' sex discrimination claim, Count I.

## B. *Count II—Sexual Harassment and Retaliation*

### Sexual Harassment

Title VII's prohibition against sex discrimination, 42 U.S.C. § 2000e–2(a)(1), protects employees against unwelcome sexual advances that create an offensive or hostile working environment. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Harassment encompasses all forms of conduct that unreasonably interfere with an individual's work performance or create an intimidating, hostile, or offensive working environment. *Id.; Doe v. R.R. Donnelley & Sons, Co.,* 42 F.3d 439, 443 (7th Cir. 1994). Under a hostile environment theory, the harassment must be sufficiently severe or pervasive so as to alter the conditions of the victim's employment and to create an abusive working atmosphere. *McKenzie v. Illinois Dep't of Transportation,* 92 F.3d 473, 479 (7th Cir.1996)(citing *Meritor,* 477 U.S. at 67, 106 S.Ct. 2399). Employees may also sue on the basis of quid pro quo harassment, which occurs when tangible employment benefits are conditioned upon compliance with a harasser's sexual demands. *Bryson v. Chicago State Univ.,* 96 F.3d 912, 915 (7th Cir. 1996). The Supreme Court has recently stated that "[t]he terms quid pro quo and hostile work environment are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether, but beyond this are of limited utility." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 751, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

The Supreme Court reaffirmed the principle that a Title VII sexual harassment claim is directed only at "discrimination ... because of ... sex" in *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Accordingly, the ultimate inquiry for a sexual harassment plaintiff is whether he or she can prove "that the conduct at issue was not merely tinged with offensive sexu-

al connotations, but actually constituted 'discrimina[tion] ... because of ... sex.'" *Id.*

Conduct characterized as sexual harassment violates Title VII when: (1) it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" from the perspective of a reasonable person; and (2) when it results in the victim subjectively perceiving the work environment to be abusive or hostile. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1983). The focus is on the totality of the circumstances. *Saxton v. A T & T,* 10 F.3d 526, 534 (7th Cir.1993). Factors relevant to determining whether a particular environment is hostile include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367. Hostile environment claims do not grow from "isolated and innocuous incidents." *McKenzie,* 92 F.3d at 480 (citing *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446 (7th Cir.1994))(finding no hostile environment harassment where plaintiff was subject to three sexually suggestive comments in a three month period); *Carr v. Allison Gas Turbine Div., Gen. Motors Corp.,* 32 F.3d 1007, 1009 (7th Cir.1994)("Title VII is not directed against unpleasantness per se but only ... against discrimination in the conditions of employment."). To be actionable, the workplace must be "hellish." *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir.1995).

An employee asserting a claim of hostile work environment sexual harassment must prove the following: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the harassment was sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Meritor Savings Bank,* 477 U.S. at 66–73, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). At issue here, is whether Harris can prove the second and third requirements, i.e., that she was subjected to unwelcome sexual harassment in the form of sexual advances/favors and that the harassment was based on sex.

In her deposition, Harris admitted that Mayhew never verbally threatened her with physical violence, that he never made sexual advances toward her, that he never struck her and that he never physically touched. She also conceded that the September 20, 1994 incident with Mayhew arose out of a labor dispute. There is no evidence that anyone connected with Defendants circulated "a letter falsely implying that Plaintiff had been tested for Herpes;" that Defendants circulated "a picture of a nude female with 'call Marcia 618–996–3082' written on it;"[6] and that Defendants circulated "a document entitled 'The Great American Bitch Award' which named Plaintiff as the recipient and stated that the award was given to her for 'being a c__t.'" Harris relies on the proposition that circumstantial evidence might lead to Defendants because at one time Mayhew admitted to circulating a picture depicting Harris as a witch.

Harris claims that Mayhew stalked her on various occasions. These alleged stalkings consist of Mayhew pulling his car behind Harris' parked car, and sitting in a bar in a hotel in which Harris was staying. Harris also alleges that Mayhew sexually harassed her by repeatedly coming into her office to deliver grievances. However, Harris testified that the only thing May-

---

**6.** As to the nude female picture, Harris testified that she knew the identify of the person who disseminated the material and knew that this person had no connection with Defendants.

hew would say to Harris when he delivered the grievances was "here is another grievance." Harris also tries to link the fact that her car was egged while in the parking lot of FWHS to demonstrate that she was sexually harassed. This argument must fail. At the same time that Harris' car was egged, another FWHS *male* employees car was also egged. The Court does not find that this rises to a level of sexual harassment in which Title VII was meant to cover.

■ Next, Harris next claims that Gordon Philip subjected her to a hostile work environment. She claims that over a ten year period Philip (1) made inappropriate comments about a phone call Harris received; (2) he called her a Dragon Lady and a jerk; (3) he twice stated "women rub their eyes, men rub their balls"; and (4) he told a joke while simulating masturbation; (5) he told a blond joke; and (6) he made a comment about Harris' breasts. While the Court does not condone Philip's conduct, the Court does not find that it rises to a level of hostile work environment under the Seventh Circuit. Title VII is "designed to protect working women from the kind of male attentions that can make the workplace hellish for women … It is not designed to purge the workplace of vulgarity." *Baskerville v. Culligan Int'l*, 50 F.3d 428, 430 (7th Cir.1995); *See Brill v. Lante*, 119 F.3d 1266, 1274 (7th Cir.1997)(Distasteful or inappropriate remarks do not rise to the level of being deeply offensive, intimidating, and sexually harassing.).

Despite Harris' numerous allegations of harassing behavior, she fails to support them with anything but her own conclusory assertions or speculation. In support of her allegations, she cites almost exclusively to her own deposition. However, these self-serving, uncorroborated assertions are not evidence of a hostile work environment. *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 840 (7th Cir.1996). The evidence does not reveal that Harris was subjected to unwelcome sexual advances/favors or that she was harassed based on her sex. The Court concludes that Harris failed to prove a prima facie case of sexual harassment based on her sex. Accordingly, the Court grants Defendants' motions for summary judgment on Harris' sexual harassment claim, Count II.

**Retaliation**

A plaintiff who brings a retaliation claim under Title VII must either present direct evidence of retaliation or proceed within the familiar burden-shifting framework set forth in *McDonnell Douglas; McKenzie*, 92 F.3d at 482–83. Under the burden-shifting framework, Plaintiff can establish a prima facie case of retaliation by showing, first, that he engaged in statutorily protected expression or activity—that is, that he "opposed" an employment practice made unlawful by Title VII. *Alexander v. Gerhardt Enterprises, Inc.*, 40 F.3d 187, 195 (7th Cir.1994); 42 U.S.C. § 2000e–3(a). To constitute opposition, the conduct an employee objects to need not actually violate Title VII. *Dey*, 28 F.3d at 1458. Rather, the test is whether the employee "reasonably believed in good faith that the practice she opposed violated Title VII." *Alexander*, 40 F.3d at 195. Second, the Plaintiff must demonstrate that she suffered an adverse action by her employer. *Knox*, 93 F.3d at 1333. Any action qualifies, so long as it is in some way adverse. Id. at 1334 (observing that "There is nothing in the law of retaliation that restricts the type of retaliatory act that might be visited upon an employee who seeks to invoke her rights by filing a complaint"). Finally, the plaintiff must establish a causal link between the protected activity or expression and the adverse action. *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 938–39 (7th Cir.1996). Such a link may be established by evidence of "a telling temporal sequence," *Holland*, 883 F.2d at 1315, or by demonstrating that the adverse action "took place on the heels of the protected activity." *Alexander*, 40 F.3d at 196. A successful prima facie case creates

a rebuttable presumption of retaliation, cf. *Miranda v. Wisconsin Power & Light Co.,* 91 F.3d 1011 (7th Cir.1996), and shifts to the defendant a burden of articulating a legitimate, nonretaliatory reason for the challenged conduct. *Knox,* 93 F.3d at 1334. If the defendant does so, the presumption of retaliation dissolves, *St. Mary's Honor Center,* 509 U.S. at 511–20, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and the plaintiff must then establish that the employer's proffered reason is a pretext for discrimination. *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1399 (7th Cir. 1997).

■ The Court finds that Harris has not established a prima facie case of retaliation. Harris can not prove that she was retaliated against for complaining about sexual harassment. As stated earlier, Harris cannot establish that she suffered an adverse employment action. The Seventh Circuit has defined an adverse action as follows:

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion, evidenced by a decrease in salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Crady,* 993 F.2d at 136.

Here, Harris was never fired from FWHS, nor was she ever demoted. FWHS approached Harris about transferring after a number of grievances were filed in her division. She expressed interest in the position and eventually applied for and accepted the new position of Director of Development and Marketing. In a letter to Melby, Harris stated that the new job description was acceptable. She retained the same benefits and the same salary she had in her old position. Her supervisor and her title remained the same. She is the third highest employee of FWHS. Her responsibilities were changed, not diminished. After Harris accepted the new position, her co-employees threw her a going away party and she cleaned out her office. Subsequently, she tried to recant her acceptance of the position. However, Harris' position had been filled by Ms. Freitag. The Court finds that this was not an adverse employment action. Accordingly, the Court grants Defendants' motions for summary judgment on Harris' retaliation claim, Count II.

### C. *Count III—Age Discrimination*

The ADEA was enacted in 1967 to eliminate workplace discrimination based upon age. *McKennon v. Nashville Banner Publ'g Co.,* 513 U.S. 352, 357–58, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). Under the ADEA, it is illegal for an employer to discharge an employee over forty years old because of that individual's age. 29 U.S.C. §§ 623(a), 631(c). To succeed in an ADEA claim, a plaintiff must establish that he would not have received adverse treatment but for his employer's intentional age-based discrimination. *Konowitz v. Schnadig Corp.,* 965 F.2d 230, 232 (7th Cir.1992).

Similar to sex discrimination, sexual harassment and retaliation, a plaintiff may prove age discrimination either (1) by presenting direct evidence of age discrimination, or (2) by relying on the indirect, "burdenshifting" method of proof outlined in *McDonnell Douglas.* Under the direct method of proof, the evidence of age discrimination must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question. *Pitasi v. Gartner Group, Inc.,* 184 F.3d 709, 714 (7th Cir.1999) (citations omitted).

■ In order to establish a prima facie case of age discrimination, Harris must demonstrate that (1) she was a member of the protected class (age 40 or over), (2) she was doing the job well enough to meet her employer's legitimate expectations, (3) de-

spite her performance, she was discharged, not hired or promoted, etc., and (4) younger, similarly-situated employees were treated more favorably, or she was replaced by someone "substantially younger," although not necessarily outside the protected class. *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir.1996)(citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)); *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 890 (7th Cir.1997)(citing *Taylor v. Canteen Corp.*, 69 F.3d 773, 779 (7th Cir.1995)).

 With respect to the fourth prong, "an inference [of age discrimination] cannot be drawn from the replacement of one worker with another insignificantly younger." *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Rather, "a plaintiff must show that [s]he was replaced by someone 'substantially younger,' although not necessarily outside the protected class." *Cianci*, 152 F.3d at 728. A ten-year difference in ages is presumptively "substantial" under *O'Connor*. "In cases where the disparity is less, the plaintiff may still present a triable claim if she directs the court to evidence that her employer considered her age to be significant. In that instance the issue of age disparity would be less relevant." *Hartley*, 124 F.3d at 893. With these principles in mind, the Court addresses Harris' claim for age discrimination under the indirect method.[7]

For her age discrimination claim, Harris maintains that "the actions of relieving [her] of her duties as Director of Rehabilitation Services and replacing her with a younger and less qualified candidate was motivated by the fact that Plaintiff was over the age of forty (40) in violation of the

ADEA and/or Plaintiff's age was a motivating factor in that decision." (First Amended Complaint, Docket Entry No. 3, Count III ¶ 19). FWHS argues that Harris has failed to present any direct or indirect evidence that her age had anything to do with FWHS' decision to transfer her to the new directorship position. The Court agrees.

FWHS argues that Harris cannot demonstrate the fourth element, that younger, similarly situated employees were treated more favorably. Harris counters that the difference in 5 to 7 years, two statements by employees at FWHS and the fact that Melby offered to "buy her out" demonstrate that there was an age animus towards Harris at FWHS. The statements Harris relies on to support her claim are: (1) Freitag referred to the two eldest members of FWHS' Board of Directors as "old farts" in the presence of FWHS' Administrator Melby; and (2) another supervisor, Gordon Phillip, repeatedly made comments that Harris' former boss, Administrator Floyd Cunningham, should "just retire."

As to the statements, the Court concludes that they do not demonstrate that Harris was transferred from her position because of her age. First, neither of the statements were made by anyone at FWHS with decision-making authority over Harris; they were made by co-employees.[8] Second, Freitag made the statement regarding "old farts" *after* Harris was transferred to her position of Director of Development and Marketing. Third, Philip's statement that Cunningham should "just retire" is not considered to be discriminatory on the basis of age. See *Halloway v. Milwaukee County*, 180 F.3d 820, 825 (7th Cir.1999)(**"requests that an em-**

---

7. The Court need not address whether Harris has established a case of age discrimination under the direct method. FWHS raised this issue in its motion for summary judgment. However, Harris did not respond to this issue in her response, instead she focused on the indirect method.

8. Freitag, Philips and Harris were all supervisors, however, none of them had supervisory capacity over each other.

ployee retire are not necessarily a reference to the employee's age."). Fourth, the fact that Melby offered to "buy her out" does not demonstrate age animus. To the contrary, Harris was very interested in the buy out offer. However, she rejected it because she was offended by the amount of the offer.

Harris has not established that she was replaced by someone "substantially younger." The Court concludes that Harris' argument that FWHS' hiring Freitag and Ford as Director of Rehabilitation suggests an age animus is without merit. Harris fails to satisfy the fourth element of the prima facie case of age discrimination. She has not presented any evidence that FWHS considered her age to be a significant factor in her transfer. Based on the evidence, the Court finds that age was not a factor in the decision to transfer Harris. The age difference between Harris and Freitag and Ford is only 5 to 7 years. This age gap between Harris, Freitag and Ford is insignificant and insubstantial under *Hartley, O'Connor* and *Pitasi.* Because Harris failed to state a prima facie case of age discrimination, the Court grants FWHS' motion for summary judgment on Harris' age discrimination claim, Count III.

### D. *Count IV—Violence Against Women Act*

■ In September 1994, Congress passed the Violence Against Women Act, 42 U.S.C. § 13981 *et seq.,* which established a civil rights remedy, in the form of a federal cause of action, to victims of gender-motivated violence. The civil rights provision of the VAWA provides:

[All persons] who commit[ ] a crime of violence motivated by gender and thus deprive[ ] another of the right [to be free from gender-motivated violence] shall be liable to the party injured, in an action for the recovery of compensatory and punitive damages, injunctive declar-

atory relief, and such other relief as a court may deem appropriate. 42 U.S.C. § 13981(c).

The VAWA does not cover "random acts of violence unrelated to gender" or "acts that cannot be demonstrated, by a preponderance of the evidence, to be motivated by gender ...." 42 U.S.C. § 13981(d)(1). Rather, Congress explicitly limited the VAWA's civil rights provision to cover only "crime[s] of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender ..." 42 U.S.C. § 13981(d)(1). Thus, to state a cause of action under the VAWA, a plaintiff must allege that he or she was a victim of a crime of violence that was committed because of his or her gender and was carried out, at least in part, on the alleged perpetrator's animus based upon the plaintiff's gender.

■ The VAWA's definition of gender motivated crime is based on Title VII. See *Crisonino v. New York City Housing Authority,* 985 F.Supp. 385, 391 (S.D.N.Y.1997)(citing S. Rep. 102–197 at 50 (1991)); *Doe v. Hartz,* 970 F.Supp. 1375, 1407 (N.D.Iowa 1997)(citing S.Rep. No. 103–138, at 52 (1993)). Congress explained that "[p]roof of 'gender motivation' under discrimination proceeds under other civil rights laws." *Crisonino,* 985 F.Supp. at 391 (citing S.Rep. No. 103–138, at 52 (1993)). Therefore, the Court must draw from Title VII case law in deciding this motion.

■ Defendants argue that Harris' claim under the VAWA must fail because neither FWHS nor any one connected with FWHS committed any crime of violence under the VAWA. Harris responds that Mayhew's conduct during the September 20, 1994 incident constituted a crime of violence motivated by gender in violation of the VAWA.[9]

---

9. Earlier, the Court denied Defendants' motions to dismiss on this issue based on Harris' allegations contained in the First Amended Complaint (Docket Entry No. 41). Specifical-

The Court does not consider the September 24, 1994 argument between Harris and Mayhew to be a crime of violence based on gender. It was a heated argument over a labor issue at FWHS. Both Harris and Mayhew were yelling and saying mean things to each other. This incident was not because of anyone's gender. In her deposition, Harris admits that Mayhew never threatened her with physical harm, that he never touched her in any way, and that he never raised his fist or otherwise attempted to strike her. In fact, Harris cannot recall any other time that Mayhew raised his voice to her. Nor can Harris recall whether Mayhew ever spoke to her about anything other than FWHS' labor matters.

■■■■ Next, she claims that the fact that her car was vandalized (the egging incident) supports her claim under the VAWA. This argument lacks merit. As stated earlier, Harris' car and another *male* FWHS employee's car were egged. This does not support her claim that she was targeted because of her gender. Further, Harris has not produced evidence that Defendants or anyone connected with Defendants egged her car. She further alleges that Mayhew stalked her on various occasions. Sitting in a bar in a hotel where Harris was staying, showing up on the premises of FWHS (but not in Harris' presence), and pulling behind her car do not constitute stalking. Even Harris testified that Mayhew did not say anything to her or make gestures to her during these incidents. Additionally in her First Amended complaint, Harris alleges that Mayhew was arrested for illegally threatening her job through *political measures* and that his actions constituted felonies under Illinois state law.[10] These actions do not support her claim under the VAWA. The record is replete with testimony that Harris and Mayhew did not like each because of their respective positions regarding Unions, not because of gender. Because Harris has not established a prima facie case under the VAWA, the Court need not address Defendants' arguments that the VAWA is unconstitutional. Accordingly, the Court grants Defendants' motions for summary judgment on Harris' VAWA claim, Count IV.

### E. Count V—Tortious Interference with Contract

■■■■ Under Illinois law, the elements of tortious interference with contract are: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract which causes a subsequent breach by the other; and (4) damages. *A–Abart Elec. Supply, Inc. v. Emerson Elec. Co.*, 956 F.2d 1399, 1404 (7th Cir.1992). Inducement of the cancellation of an at-will contract, at most, constitutes interference with a prospective economic advantage, not interference with contractual relations. *Prudential Ins. Co. of Am. v. Sipula*, 776 F.2d 157, 162 (7th Cir.1985). Because Harris was/is an at-will employee of FWHS, Harris cannot state a claim for tortious interference with contract based on any interference by these Defendants. To the extent that Count V is based on this theory, the Court grants Defendants' motion for summary judgment.

■■■■ Harris also attempts to state a claim for tortious interference with prospective economic advantage based on Defendants' actions in inducing FWHS to

---

ly, the Court found that "Harris bases her VAWA claim upon different crimes allegedly motivated by gender: assault, intimidation, hate crime and stalking. Any one of these alleged crimes, if motivated by gender, is sufficient to establish a VAWA cause of action." Here, the Court concludes that Harris has not established that Defendants or anyone connected with Defendants committed a crime of violence based on gender against Harris.

**10.** Harris neglected to inform the Court that the charges against Mayhew were summarily dismissed in January 1998.

transfer Harris to the position of Director of Development and Marketing. The elements of this tort are: (1) a reasonable expectation by the plaintiff of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate interest from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference. *Fellhauer v. City of Geneva,* 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870, 878 (1991). "Purposeful interference" means that the defendant has committed some impropriety in interfering with the expectancy, and is an element that the plaintiff must plead and prove. See *Dowd & Dowd, Ltd. v. Gleason,* 181 Ill.2d 460, 230 Ill.Dec. 229, 693 N.E.2d 358, 371 (1998).

The Court finds that Harris has failed to establish a prima facie case of tortious interference with prospective economic advantage. Harris has not shown that Defendants committed some impropriety in interfering with the expectancy. There is no evidence that Defendants knew anything about FWHS and Harris' business relationship. Harris applied for the job of Director of Development and Marketing, she was offered the job and she accepted the job. In fact, she also helped define the responsibilities of the position. Afterwards, she tried to recant her position because she felt that the position did not have the same amount of responsibility as her last position. There is no evidence that Defendants used their power to remove Harris from her job as Director of Rehabilitation. Accordingly, the Court grants Defendants' motion for summary judgment on Harris tortious interference claim, Count V.

## VI. *Sanctions*

### A. *Rule 11 Sanctions*

FEDERAL RULE OF CIVIL PROCEDURE 11(b) mandates that an attorney who presents a pleading to the court certify that:

to the best of [his or her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; ... (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery [and] ... (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED.R.CIV.P. 11(b) (emphasis added).

To measure the reasonableness of the party's inquiry into the factual basis of its claim, the Court must look to many factors including: "whether the signer of the documents had sufficient time for the investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts." *Divane v. Krull Electric Co., Inc.,* 200 F.3d 1020, 1028 (7th Cir.1999)(quoting *Brown v. Federation of State Medical Bds. of the United States,* 830 F.2d 1429, 1435 (7th Cir. 1987)).

One of the basic purposes of Rule 11 is "to deter baseless filings in the district court...." *Fries v. Helsper,* 146 F.3d 452, 458 (7th Cir.1998)(quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). To carry out this purpose, Rule 11 imposes on parties a responsibility to file papers with the Court only when a party has reasonable basis in fact and law for the proposition it is advocating. *Indianapolis Colts v. Mayor & City Council of Balti-*

*more,* 775 F.2d 177, 181 (7th Cir.1985)(citing *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2nd Cir. 1985)). If the Court finds grounds for sanctions, the Court has a duty, not an option, to sanction the opposing party. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 67, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

Because the purpose of Rule 11 is to deter rather than punish, the type of sanction a Court can impose depends on the opposing party's conduct. *See* Advisory Committee Notes to 1993 Amendments to Rule 11. "[Sanctions] may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court … an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." FED.R.CIV.P. 11(c)(2). The type of sanction allowed is limited. If the pleading or motion is being presented for any improper purpose, "such as to harass or to cause unnecessary or needless increase in the cost of litigation," the Court may award monetary sanctions against the opposing party. FED.R.CIV.P. 11(b)(1). However, if the sanction is imposed on the grounds that the opposing party has presented claims that are not "warranted by existing law or the establishment of new law," a court does not have the power to impose monetary sanctions. FED.R.CIV.P. 11(c)(2)(A).

In addition, Rule 11(c)(1)(A) requires that the parties moving for sanctions follow two procedures. First, the motion for Rule 11 sanctions must be made "separately from other motions or requests and [must] describe the specific conduct alleged to violate subdivision (b)." *Divane,* 200 F.3d at 1025 (quoting FED.R.CIV.P. 11(c)(1)(A)). Allowing a Rule 11 motion to be made along with another motion is considered an abuse of discretion. *Id.* (citing *Corley v. Rosewood Care Center, Inc. of Peoria,* 142 F.3d 1041, 1058 (7th Cir.1998)). Second, the motion may not be filed with the court unless, within twenty-one days of service, the opposing party has not withdrawn or corrected the challenged behavior. *Id.* (citing FED.R.CIV.P. 11(c)(1)(A)). Imposing sanctions by motion without adhering to the twenty-one day safe harbor is considered an abuse of discretion. *Id.* (citing *Johnson v. Waddell & Reed, Inc.,* 74 F.3d 147, 150–51 (7th Cir.1996)).

**B.** *28 U.S.C. § 1927 Sanctions*

Similar to Rule 11, 28 U.S.C. § 1927 allows recovery of fees against an attorney if that attorney litigates "unreasonably and vexatiously." *Ross v. City of Waukegan,* 5 F.3d 1084, 1089 n. 6 (7th Cir.1993)(citing *Koffski v. Village of North Barrington,* 988 F.2d 41, 45 n. 8 (7th Cir. 1993)). " 'If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious.' " *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.,* 886 F.2d 1485, 1491 (7th Cir.1989)(quoting *In re TCI, Ltd.,* 769 F.2d 441, 445 (7th Cir. 1985)). Ordinary negligence does not give rise to § 1927 sanctions; rather some evidence must exist that an attorney acted with either subjective or objective bad faith. *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1183–84 (7th Cir.1992).

The Seventh Circuit has held that sanctions under § 1927 are appropriate " 'only in instances of a serious and studied disregard for the orderly processes of justice,' " *Ross v. City of Waukegan,* 5 F.3d at 1089 n. 6 (quoting *Kiefel v. Las Vegas Hacienda, Inc.,* 404 F.2d 1163, 1167 (7th Cir.1968)), or "where a 'claim [is] without a plausible legal or factual basis and lacking in justification.' " *Burda v. M. Ecker Co.,* 2 F.3d 769, 777 (7th Cir.1993)(quoting *Walter v. Fiorenzo,* 840 F.2d 427, 433 (7th Cir.1988)). "[I]t is within the sound discretion of the district court whether to grant or to deny sanctions under § 1927." *Ross,* 5 F.3d at 1089 n. 6. With these principles in mind, the Court turns to motions for sanctions.

## VII. *Analysis* [11]

First, Harris claims that Defendants did not comply with the "safe harbor" time limit of Rule 11 in filing their motions for sanctions. Harris argues that Defendants Mayhew, LIUNA and SILDC's motion for sanctions merits denial because she moved for leave to file an amended complaint within the twenty-one day period.[12] Further, she argues that FWHS' motion violates the twenty-one day rule, because FWHS served and filed its motion the same day. First, the Court must determine whether Mayhew, LIUNA and SILDC's motion complied with the safe harbor rule and then determine whether FWHS complied with the safe harbor rule.

As stated earlier, Defendants Mayhew, LIUNA and SILDC *served* their Rule 11 motion for sanctions on Harris' attorneys on May 25, 1999. Twenty-one days later on June 16, 1999, Mayhew, LIUNA and SILDC filed their motion for sanctions with the Court. Harris argues that because she *moved for leave* to file a second amended complaint on June 15, 1999, Mayhew, LIUNA and SILDC violated the twenty-one day rule by filing the motion with the Court. The Court does not agree with Harris.

As of June 16, 1999, the Court had not granted Harris leave to file a second amended complaint. The proposed Second Amended Complaint did not supersede the First Amended Complaint, therefore, the First Amended Complaint was and still is the valid complaint on file. Harris did not appropriately correct or withdraw the allegations contained in the First Amended Complaint within the twenty-one day time period provided by the rule. The Court finds that Defendants Mayhew, LIUNA and SILDC properly filed their Rule 11 motion.

As to whether FWHS properly followed requirements of Rule 11, Harris argues that FWHS' motion violates the twenty-one day rule because FWHS served and filed its motion the same day. The Court agrees with Harris. During the August 16, 1999 hearing, FWHS' counsel asked for leave to file a motion for sanctions pursuant to Rule 11 and pursuant to 28 U.S.C. § 1927. The Court granted FWHS' request and allowed FWHS an extension of time to file the motion. FWHS filed its Rule 11 and 28 U.S.C. § 1927 motion for sanctions on September 20, 1999 (Docket Entry No. 120).

Here, the Court concludes that FWHS did not comply with either of the two procedures of Rule 11. Rule 11(c)(1)(A) specifically states that "A motion for sanctions under this rule shall be made *separately* from other motions or requests . . . ." FED.R.CIV.P. 11(c)(1)(A)(emphasis added); *Divane*, 200 F.3d at 1025. Rule 11(c)(1)(A) also states that a sanctions motion "shall not be filed with or presented to the court unless, within twenty-one days after the service of the motion . . . the challenged paper, claim, defense, contention, allegation or denial is not withdrawn or appropriately corrected." FED.R.CIV.P. 11(c)(1)(A). FWHS filed its Rule 11 motion for sanctions in *conjunction* with its 28 U.S.C. § 1927 request for sanctions, and it also served its motion for sanctions on Harris the same day it filed the motion for sanctions with the Court. Therefore, the Court will not consider FWHS' motion for sanctions as one brought pursuant to Rule 11. However, the Court will consider it as one brought pursuant to 28 U.S.C. § 1927. Accordingly, the Court denies FWHS' motion for sanctions pursuant to Rule 11. The Court now turns to the merits of all Defendants' motions for sanctions.

---

**11.** The Court finds that the tone, the attitude and the language used in the motions for sanctions improper. The Court finds this type of conduct unprofessional.

**12.** Harris did not cite any case law for this proposition. The Court is not aware of any which stands for the same.

Defendants argue that Harris' First Amended Complaint and Harris' memorandum of law in opposition to Defendant's motion to dismiss and/or for summary judgment contain many specific allegations which are not supported by evidence. Further, they argue that those pleadings were filed to cause unnecessary delay and for the purpose of needlessly increasing the cost of litigation. Harris responds that she and her attorneys have acted in good faith throughout the litigation.

Defendants contend that there is no evidence to support the allegation: "On January 2, 1996, Plaintiff met with John Markley, then acting administrator of FWHS, and informed him that Mayhew made and/or caused to be made threatening comments to Plaintiff, including a threat to shoot her." (Paragraph 20, Count I of the First Amended Complaint). Harris and her counsel respond that this allegation was inadvertently included in the First Amended Complaint and that in three other places in the First Amended Complaint, the same allegation was changed leaving out Mayhew's name. The changed allegation states: "On January 2, 1996, Plaintiff met with John Markley, then acting administrator of FWHS, and informed him that she had received threatening phone calls, including a threat to shoot her." (Paragraph 20, Count II; Paragraph 17, Count IV and Paragraph 15, Count V). As to Paragraph 20, Count I (the allegation that referenced Mayhew), Harris testified:

> "what I said to John Markley was that I had received some threatening phone calls and told him what the phone calls said about threats to shoot me and it was that he assumed that it came from Mayhew.... I've told you what I recall and I explained that to my attorneys and they felt that was still accurate."

(Harris deposition, page 413, lines 13–22).

As to Paragraph 20, Count II; Paragraph 17, Count IV and Paragraph 15, Count V, Harris testified that she was told on February 19, 1999, that a man was identified as making threatening phone calls to her, and that she does not have any facts to associate this man with any of the Defendants. She further testified that this man admitted to making most of the phone calls and that the man who made most of the phone calls denied that there was any connection or that anyone put him up to it. (Harris deposition, page 350, lines 1–18).

In addition, the First Amended Complaint contains other allegations which make reference that Mayhew "made or caused to be made several harassing and threatening phone calls and on one occasion, threatened and/or caused someone else to threaten to kill Plaintiff, ...." (Paragraph 16, Count IV) or makes references to threatening phone calls (Paragraph 30(e), Count II and Paragraph 23(e), Count V). The Court finds that these allegations with or without reference to Mayhew are misrepresentations of the evidence and do not contain evidentiary support, in light of the fact that a man not associated with Defendants has been identified as the perpetrator of the calls. In her July 8, 1999 response, Harris simply states that she should not be sanctioned because her second amended complaint either left out the reference to Mayhew or left out the allegation all together. Harris did not even attempt to acknowledge that the person who made the calls was not connected to Defendants.

Similarly, Defendants argue that there is no evidence to support Harris' allegations regarding vandalism (Paragraph 30(e), Count II and Paragraph 23(e), Count V). Harris testified that her car and another employees car, Floyd Cunningham, had eggs thrown on it when parked in an employee-only parking lot. (Harris deposition, pages 345–348). Harris thought that the cars were targeted, therefore, Defendants were automatically responsible (Harris deposition, pages 345–347). Harris responds that "[t]he jury can decide at trial the extent to which it believes Defendant Mayhew was involved in

the numerous acts of harassment and intimidation to which he does not admit. In any event this paragraph has been amended in the second amended complaint to delete any allegations that Defendants committed these acts; the new complaint simply states that these occurred." (Docket Entry No. 78). The Court finds that a reasonable attorney would not have included these allegations without further proof. The Court finds that allegations about Defendants and vandalism were pled in bad faith.

Defendants further contend that the allegations in Paragraphs 18 and 19 of Count IV of the First Amended Complaint are half truths which are meant to mislead the Court. Paragraphs 18 and 19 of Count IV state: "On or about July 16, 1997, Mayhew was arrested for illegally threatening Plaintiff's job through political measures. The aforementioned conduct of Mayhew constituted felonies under Illinois state law, including without limitation the following: 720 I.L.C.S. 5/12–6, 720 I.L.C.S. 5/12–7.1 and 720 I.L.C.S. 5/12–7.3." Defendants argue that Harris left out the fact that this charge was dismissed six months later and that Harris and her attorneys knew this before she filed suit.

As to the allegation that Mayhew was arrested, Harris responds that this allegation is true, because Mayhew was arrested on that charge on that date, but in good faith Harris has taken the allegation out of the second amended complaint. As to the allegation that Mayhew's conduct constituted felonies, Harris argues that the circumstantial evidence demonstrates that his conduct did "constitute" these crimes and Harris and her attorneys stand by this allegation. The Court concludes that including the allegation that Mayhew was arrested while leaving out the fact that the charges against Mayhew were dropped, indicates bad faith and an attempt to mislead the Court.

The Seventh Circuit recently stated: "Spirited argument before the Court is encouraged, but not deception." *Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1069 (7th Cir.2000). "An honest presentation of the case, adherence to the basic technical rules, and a colorable basis in law and fact—as well as a certain amount of common sense—will shield litigants and their attorneys from sanctions." *Id.* (quoting *Tomczyk v. Blue Cross & Blue Shield United of Wis.*, 951 F.2d 771, 779 (7th Cir.1991)).

Here, the Court finds that Harris and her attorneys repeatedly misrepresented the evidence to the Court. The misrepresentations began in the original complaint [13] and continued throughout Harris' additional pleadings in this litigation. [14] To compound the improprieties, Harris' counsel stood by the misrepresentations during briefing on her motion for leave to file a second amended complaint, in her responses to the motions for sanctions and in her responses to the motions for summary judgment, even though Defendants presented evidence contradicting both Harris' new and old allegations.

The Court further finds that Harris' attorneys failed to make a "reasonable inqui-

13. On September 16, 1998, attorney Charles Poplstein from the law firm of Thompson Coburn signed and filed Harris' original complaint which contained the following allegation: on or about July 16, 1997, Mayhew was arrested for threatening to kill Plaintiff and making threatening and intimidating phone calls. (Docket Entry No. 1, Count IV, paragraph 18). The First Amended Complaint filed on October 6, 1998 did not include this allegation (Docket Entry No. 3). However, on May 20, 1999, Harris testified at her deposition that she approved of the filing of the original complaint but informed her attorneys prior to the filing of the original complaint that the allegation was false. (Harris deposition, page 443, lines 3–20). The Court notes that this conduct is totally unacceptable.

14. Harris and her attorneys' characterization that the September 20, 1994, verbal argument between her and Mayhew (the incident which involved the suspension of a pro-union employee) is a violation of the Illinois Hate Crime statute indicates bad faith. (Docket Entry No. 133, page 17).

ry" under the circumstances and failed to conduct a reasonable investigation into the validity of its allegations before making Defendants defend this action. The Court also finds that this case was filed to harass and to cause unnecessary or needless increase in the cost of litigation. Based on the circumstances in this case, the Court finds that sanctions are warranted and proper under both Rule 11 and 28 U.S.C. § 1927.

### VIII. *Conclusion*

Accordingly, the Court **GRANTS** Laborers' International Union of North America, Southern Illinois Laborers' District Council and Randall J. Mayhew's motion for summary judgment (Docket Entry No. 88). The Court **GRANTS** Franklin–Williamson's motion for partial summary judgment on Counts I and II (Docket Entry No. 98). The Court **GRANTS** Franklin–Williamson's motion for partial summary judgment on Counts III and IV (Docket Entry No. 105). The Clerk of the Court shall enter judgment in favor of Laborers' International Union of North America, Southern Illinois Laborers' District Council, and Randall J. Mayhew against Marcia Harris on Counts I, II, IV and V of the First Amended Complaint. Further, the Clerk of the Court shall enter judgment in favor of Franklin–Williamson and against Marcia Harris on Counts I, II, III, and IV of the First Amended Complaint.

In addition, the Court **GRANTS** Laborers' International Union of North America, Southern Illinois Laborers' District Council and Randall J. Mayhew's motion for Rule 11 sanctions (Docket Entry No. 62). The Court **GRANTS in part and DENIES in part** Franklin–Williamson's motion for Rule 11 sanctions and for sanctions pursuant to 28 U.S.C. § 1927(Docket Entry No. 120). The Court **GRANTS** Laborers' International Union of North America, Southern Illinois Laborers' District Council and Randall J. Mayhew's motion for sanctions pursuant to 28 U.S.C. § 1927 (Docket Entry No. 124).

Pursuant to both Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, the Court hereby **SANCTIONS** Harris and her attorneys, the law firm of Thompson Coburn. In order to deter similar future conduct, the Court concludes that monetary sanctions are appropriate. The Court **ORDERS** Harris and her attorneys to reimburse Defendants for the reasonable attorney fees and expenses incurred in defending this action. The parties are strongly encouraged to reach an agreement on the amount of such fees and expenses and to file a joint stipulation of the amount.

In the event the parties are unable to reach an agreement, Defendants have up to and including Tuesday, May 30, 2000, to file an itemization of all fees and expenses, together with sufficient detail and/or explanation demonstrating that such fees and expenses are reasonable. Harris and her attorneys have until Tuesday, June 13, 2000, to respond and Defendants have until Monday, June 27, 2000 to reply.

**IT IS SO ORDERED.**